SCHNEIDER WALLACE
COTTRELL KIM LLP
Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Esther Bylsma (SBN 264208)
Robert E. Morelli, III (SBN 363123)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
ebylsma@schneiderwallace.com
rmorelli@schneiderwallace.com

*Attorneys for Plaintiff, the Collective, the Putative Class, Aggrieved Employees and the State of California*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONRAD RELOJ, on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY INC. d/b/a GEICO,<br><br>        Defendant. | Case No. 3:21-cv-01751-L-MSB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT**<br><br>Date: August 24, 2026<br>Time: 1:30 p.m.<br>Location: Courtroom 2C<br><br>Honorable Magistrate Michael S. Berg<br><br>Action filed: October 8, 2021<br>Trial date: None set |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................1

II.    BACKGROUND .......................................................................................2

       A.    Facts…………..........................................................................2

       B.    Procedural History ...................................................................3

       1. The Federal Action……………....................................................3

       2. PAGA Action………....................................................................5

       3. Global Settlement…………..........................................................6

III.   TERMS OF THE SETTLEMENT ...........................................................7

       A.    Non-Reversionary, Common Fund Allocations.................................7

       B.    Class and Collective Definitions. ........................................................7

       C.    Allocation and Awards. ...................................................................8

       D.    Scope of Releases. ............................................................................10

       E. Settlement Administration. ......................................................................11

IV.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS .....12

       A.    The Class is Numerous and Ascertainable. ......................................12

       B.    Plaintiff's Claims are Typical. .........................................................13

       C.    Plaintiff and Class Counsel Will Adequately Represent the Class.....13

       D.    This Case Presents Common Questions of Law and Fact..................13

       E.    The Rule 23(b)(3) Requirements for Class Certification are Met. .....15

V.     The Settlement Should Be Preliminarily Approved Because It Is Fair,
       Reasonable, and Adequate........................................................................16

       A.    The Settlement Provides Robust Monetary Relief to the Class..........18

       B.    The Settlement Establishes a Fair and Equitable Distribution of the
             Settlement Proceeds Tailored to the Respective Claims of
             the Class and Collective................................................................21

ii

C.   The Extensive Discovery in this Action Enabled the Parties to Make Informed Decisions Regarding Settlement. .........................23

D.   Litigating the Action Would Delay Recovery, and Would be Expensive, Time Consuming, and Risky. .....................................24

E.   The Settlement is the Product of Informed, Non-collusive, and Arm's Length Negotiations Between Experienced Counsel........26

F.   The Service Awards are Reasonable, and the Class Representative Have Adequately Represented the Classes................27

G.   The Requested Attorneys' Fees and Costs are Reasonable and Plaintiff's Counsel Have Adequately Represented the Classes...29

H.   The Proposed Notices of Settlement and Claims Process Are Reasonable...................................................................................32

VI.   The SETTLEMENT MEETS THE CRITERIA FOR APPROVAL UNDER THE FAIR LABOR STANDARDS ACT................35

VII.   CONCLUSION .........................................................................................36

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

# TABLE OF AUTHORITIES

**Cases**

*Acuna v. So. Nev. T.B.A. Supply Co.*,
324 F.R.D. 367 (D. Nev. 2018)........................................................................ 36

*Carter v. Anderson Merchandisers, LP*,
No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010).... 27

*Caudle v. Sprint/United Mgmt. Co.*,
No. C 17-06874 WHA, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) ................. 12

*Chastain v. Cam*,
No. 3:13-cv-01802-SI,2016 U.S. Dist. LEXIS 52092 (D. Or. Apr. 19, 2016) ....... 12

*Chery v. Tegria Holdings LLC*,
No. C23-612-MLP, 2024 U.S. Dist. LEXIS 221382 (W.D. Wash. Dec. 6, 2024) . 30

*Chu v. Wells Fargo Investments, LLC*,
Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645 (N. D. Cal.
Feb.16, 2011) ................................................................................................ 29

*Churchill Village, LLC. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................... 17, 33

*Falk v. Children's Hosp. L.A.*,
237 Cal. App. 4th 1454 (2015) ...................................................................... 21

*Forrester v. Roth's I. G. A. Foodliner, Inc.*,
475 F.Supp. 630 (D Or 1979) ........................................................................ 25

*Fry v. Hayt, Hayt & Landau*,
198 F.R.D. 461 (E.D. Pa. 2000).................................................................... 13

*Gonzales v. CoreCivic of Tennessee, LLC*,
2018 WL 4388425 (E.D. Cal. Sept. 13, 2018) ........................................... 23, 26

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
280 F.R.D. 388 (N.D. Ill. 2011)..................................................................... 25

*Ikonen v. Hartz Mountain Corp.*,
122 F.R.D. 258 (S.D. Cal. 1988) .................................................................. 12

iv

*In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*,
   289 F.R.D. 526 (N.D. Cal. 2012) .......................................................................... 25

*Khoja v. Orexigen Therapeutics*,
   No. 15-cv-00540-JLS-AGS, 2021 U.S. Dist. LEXIS 230105 (S.D. Cal. Nov. 30, 2021) ..................................................................................................................... 21

*Kilbourne v. Coca-Cola Co.*,
   No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)............. 25

*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
   No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) ................... 12

*Lewis v. Starbucks Corp.*,
   No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ... 23

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .......................................................................... 35

*Ma v. Covidien Holding, Inc.*,
   2014 WL 360196 (C.D. Cal. Jan. 31, 2014)......................................................... 18

*McKinnon v. City of Merced*,
   No. 1:18-cv-01124-, 2020 U.S. Dist. LEXIS 151361 (E.D. Cal. Aug. 19, 2020) .. 32

*Millan v. Cascade* Water Servs.,
   310 F.R.D. 593 (E.D. Cal. 2015) ......................................................................... 36

*Otey v. CrowdFlower, Inc.*,
   No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015)................. 35

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ............................................................................. 29

*Ramirez v. Benito Valley Farms, LLC,*
   No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) .............................................................................................. 23

*Romero v. Producers Dairy Foods, Inc.*,
   235 F.R.D. 474 (E.D. Cal. 2006) ......................................................................... 13

*Smith v. Family Video Movie Club, Inc.*,
   311 F.R.D. 469 (N.D. Ill. 2015)........................................................................... 12

v

*Smith v. Lux Retail N. Am., Inc.*,
   No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562 (N.D. Cal. June 13, 2013) 26

*Smothers v. NorthStar Alarm Servs., LLC,*
   No. 217CV00548KJMKJN, 2020 U.S. Dist. LEXIS 56473, 2020 WL 1532058
   (E.D. Cal. Mar. 31, 2020) ................................................................................ 32

*Spann v. J.C. Penney Corp.*,
   211 F.Supp.3d 1244 (C.D. Cal. 2016)................................................................ 28

*Van Vranken v. Atl. Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) .................................................................... 27

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................................... 29

*Weist v. City of Davis*,
   No. 2:16-cv-01683-LEK, 2021 U.S. Dist. LEXIS 28678 (E.D. Cal. Feb. 12, 2021)
   ........................................................................................................................... 30

*Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331 (E.D. Cal. Aug. 21,
   2019) ................................................................................................................. 28

*York v. Starbucks Corp.*,
   No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) .... 25

**Statutes**

29 U.S.C. § 201 .............................................................................................................. 8

29 U.S.C. § 206 ............................................................................................................ 11

29 U.S.C. § 207 ............................................................................................................ 11

29 U.S.C. § 211 ..................................................................................................... 11, 28

29 U.S.C. § 216 .....................................................................................................31, 35, 36

29 U.S.C. 260 .............................................................................................................. 25

Cal. Bus. & Prof. Code § 17200........................................................................... 4, 14

Cal. Civ. Code § 1542................................................................................................ 11

Cal. Lab. Code § 1182.11 ...................................................................................... 4

Cal. Lab. Code § 1182.12 ...................................................................................... 4

Cal. Lab. Code § 1194 ........................................................................................... 4

Cal. Lab. Code § 1197 ........................................................................................... 4

Cal. Lab. Code § 201 ............................................................................................. 4

Cal. Lab. Code § 202 ............................................................................................. 4

Cal. Lab. Code § 203 ........................................................................................ 4, 21

Cal. Lab. Code § 204 ............................................................................................. 4

Cal. Lab. Code § 226 ........................................................................................ 4, 21

Cal. Lab. Code § 226.7 .......................................................................................... 4

Cal. Lab. Code § 2698 ........................................................................................... 5

Cal. Lab. Code § 510 ............................................................................................. 4

Fed. R. Civ. P. 23.......................................................................................... passim

**Treatises**

Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992) ................................. 33, 34

*Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed.
    2004) ................................................................................................................ 16

## I. INTRODUCTION

After more than three years of intensive litigation, the Parties have reached a global settlement of this class, collective, and PAGA Action[1] ("the Action"). Plaintiff now renews his motion preliminary approval of the Revised Settlement and other appropriate measures consistent with the Revised Settlement.

This Action alleges that Defendant violated state and federal wage and hour laws by underpaying wages and failing to provide compliant meal and rest periods to Defendant's current and former non-exempt employees who provide insurance adjustment services throughout California. Plaintiff brings this case on behalf of a class and collective comprising approximately 892 employees, as well as on behalf of the California Labor Commissioner, under PAGA.

The Settlement was reached after extensive fact and expert discovery in the Action. This discovery allowed counsel to thoroughly analyze both damages and potential claims and defenses. The Settlement was achieved only after extensive arms-length bargaining, including four separate mediations with highly-regarded mediators.

The Settlement fully resolves the claims, securing an excellent benefit for class members. The non-reversionary $8,500,000 gross settlement amount represents an exceptional recovery for the Class, Collective, and Aggrieved Employees for claims unlikely to have been prosecuted as individual actions. The Settlement is an efficient outcome in the face of expanding and uncertain litigation.

As the Settlement brings a fair, reasonable, and adequate resolution to this action, Plaintiff now moves for an Order:

(1) conditionally certifying the class for settlement purposes and appointing

---

[1] The PAGA action was previously pending in Alameda County Superior Court, Case No. 21CV003563, and was added to this action via the First Amended Complaint filed January 31, 2025. ECF 269. The action in Alameda County Superior Court remains pending while the parties pursue approval of the Revised Settlement.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

Conrad Reloj as class representative and SWCK as Class Counsel;

(2) preliminarily approving the Settlement under Rule 23;

(3) approving the Settlement under the Fair Labor Standards Act;

(4) approving the Settlement under PAGA;

(5) approving and ordering Notice consistent with the process set forth in the Settlement; and

(6) setting a final approval hearing.

This renewed motion addresses the concerns identified in the Court's prior Order Denying Preliminary Approval. Specifically: (1) the Settlement's allocation methodology was clarified and is supported by a reasoned explanation tied to differences in claim value and litigation risk; (2) the scope of the releases has been narrowed to claims arising from the factual predicate of the Operative Complaint, eliminating reliance on superseded pleadings or external documents; (3) the PAGA release was revised to reflect that it is made by Plaintiff on behalf of the State of California and is limited to claims for civil penalties, without releasing individual damages claims, and is limited to the factual predicate of the case; and (4) the procedural provisions have been revised to ensure compliance with Rule 23 the FLSA, and the Court's orders, including removal of any opt-in mechanisms based on check negotiation and eliminating the provision allowing modification of the settlement without court approval. These revisions address the Court's concerns and support preliminary approval under Rule 23(e).

## II. BACKGROUND

### A. Facts

Defendant provides vehicle insurance, property insurance, and business insurance. First Am. Compl, ECF No. 269, at ¶ 22. Defendant operates in all fifty states, including California. *See id. at* ¶ 19. Plaintiff and Class and Collective Members ("Adjusters") are current or former insurance adjusters in California. *Id.* at ¶ 23. The duties of Adjusters, including Plaintiff, include but are not limited to

processing insurance claims, calling customers, inspecting vehicles for collision and comprehensive damages, maintaining and managing accurate funds for the issuance of claim payments, submitting reports online in real time, and driving to customer homes or working in auto body shops to assess vehicle damage. *Id.*

Adjusters are scheduled to work approximately seven hours and 45 minutes per day, five days a week, for a total of approximately 38.75 hours per week. *Id.* at ¶ 25. Plaintiff alleges that Defendant regularly requires Adjusters to work additional hours beyond this scheduled time while off-the-clock and without receiving compensation, performing duties including handling claims, fielding customer calls, and calling repair shops. *Id.* at ¶¶ 25-27. Plaintiff alleges that Defendant discourages Adjusters from reporting this off-the-clock time through a scheme of productivity metrics and evaluations, under which reporting this additional time can lead to write-ups, probation, and denials of pay increases and promotion opportunities. *Id.*

Additionally, Plaintiff alleges that Defendant routinely: denied Adjusters timely and compliant off-duty meal and rest periods; manipulated Adjusters' timecards to make it appear they took requisite breaks; denied Adjusters uninterrupted rest periods; failed to provide Adjusters with accurate wage statements; and failed to pay Adjusters all wages owed at the end of their employment. *See generally* ECF No. 269.

As a result of these violations, Plaintiff alleges that Defendant systematically violates the FLSA and California labor laws. Defendant denies these allegations and denies that Plaintiff's allegations are appropriate for class/collective and/or representative treatment for any purpose other than for settlement purposes.

**B. Procedural History**

**1. The Federal Action**

On October 8, 2021, Plaintiff Conrad Reloj filed this class and collective action on behalf of himself and current and former non-exempt, hourly employees of Defendant who work or worked for GEICO as Auto Claim and/or Damage Adjusters, including similar roles with different titles (collectively "Adjusters"),

in California, asserting claims under the California Labor Code and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"). *See generally* ECF No. 1. The Federal Action asserts claims for: (1) failure to pay minimum and overtime wages in violation of the FLSA; (2) failure to pay for all hours worked in violation of Labor Code §§ 204 and 1194; (3) failure to pay minimum wage in violation of Labor Code §§ 1182.11, 1182.12, 1194, and 1197; (3) failure to pay overtime wages in violation of Labor Code § 510; (4) failure to provide meal and rest breaks in violation of Labor Code §§ 226.7 and 512; (5) failure to provide accurate itemized wage statements in violation of Labor Code § 226; and (6) failure to timely pay final wages and waiting time penalties in violation of Labor Code §§ 201, 202 and 203; (7) unlawful business practices in violation of Business & Professions Code §§ 17200 *et seq. Id.* Defendant filed its Answer on November 12, 2021, denying Plaintiff's allegations. Declaration of Carolyn H. Cottrell ("Cottrell Decl.") at ¶ 9. The Parties then engaged in pre-conditional certification where thousands of pages of documents and data were exchanged. Cottrell Decl. at ¶ 10.

Plaintiff also interviewed numerous and Collective Members, which covered topics including dates and locations of work, hours of work, pre-shift and post-shift off-the-clock work, and meal and rest breaks. *Id.* at ¶ 11. Through this process, Plaintiff garnered substantial factual background regarding the alleged violations, which Plaintiff's counsel utilized to build their case and to assess Defendant's potential exposure in this action. *Id.*

On June 6, 2022, Plaintiff filed a Motion to Conditionally Certify the Collective, which he amended on June 15, 2022. ECF No. 46, 50. Defendant filed its response on July 15, 2022. ECF No. 63. On March 31, 2023, this Court granted Plaintiff's Motion and certified the collective. ECF No. 101.

The Parties then engaged in substantial discovery and motion practice. Each side served written discovery, and a large volume of documents was produced. Defendant alone produced over a terabyte of data, including but not limited to its

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

policies, job descriptions, personnel records, written complaints, and tens of thousands of pages of data, emails, and time and payroll records. Cottrell Decl. at ¶ 13.

Both parties deposed fact and expert witnesses, including twenty-eight (28) opt in Plaintiffs. *Id.* at ¶ 14. Each side also retained experts, submitted expert reports, deposed the other's expert, and filed *Daubert* motions. *Id.* at ¶ 15. Plaintiff also moved for Fed. R. Civ. P. 23 class certification, which was fully briefed as of July 22, 2024. *See* ECF No. 239.

### 2. PAGA Action.

Plaintiff Reloj filed a separate action against Defendant on December 6, 2021, in the Superior Court of California, County of Alameda, to assert claims for penalties under California Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et seq.,* arising from Defendant's violations of the California Labor Code. *Reloj v. Government Employees Insurance Company Inc., et al.*, Superior Court of California, County of Alameda, Case Number 21CV003563. Cottrell Decl. at ¶ 17, Defendant filed its Answer on January 18, 2022, denying Plaintiff's allegations. *Id*.

On or about June 1, 2022, Hon. Katherine Bacal granted the Parties' Stipulation to Coordinate Actions and Add-On Case. Cottrell Decl. at ¶ 18. This order coordinated the PAGA Action with other wage and hour cases against GEICO, in the Superior Court of California for the County of San Diego, matter no. JCCP5221 ('the "GEICO Wage and Hour Cases"). *Id*.

The Parties substantially litigated the PAGA action. Plaintiff served written discovery on Defendant and noticed several depositions of supervisors/managers of aggrieved employees, in addition to a PMK deposition. Cottrell Decl. at ¶ 19. Plaintiff retained David Breshears and Laura Steiner as experts in the PAGA action. *Id.* Mr. Breshears processed Atlas and CCC data (internal data reflecting work performed by Adjusters) to identify off-the-clock work. *Id.* Ms. Steiner was prepared to provide expert witness opinion, evidence, and testimony, and to rebut any opinions, regarding survey evidence concerning work performed during meal and rest breaks and other

off-the-clock work, including the conduct, methodology, results, and implications of the survey, the estimated incidence of work off-the-clock, including during meal and rest periods, and other related issues. Cottrell. *Id.*

Trial in the GEICO Wage and Hour Cases was set for November 8, 2024. *Id.* at ¶ 20. At the time of settlement, Plaintiff's counsel had already begun their preliminary trial preparations. *Id.*

### 3. Global Settlement

Despite vigorously litigating the Action, the Parties nonetheless remained open to a pretrial resolution. Defendant provided class-wide figures, including the total number of putative Class and Collective Members and associated workweeks and pay periods, hourly rates, and additional data points to enable Plaintiff's counsel to evaluate damages on a Class and Collective basis to further these discussions. Cottrell Decl. at ¶ 21. On September 16, 2024, the Parties participated in a **fourth** mediation. Cottrell Decl. at ¶ 23. The Parties accepted a mediator's proposal to settle both the Federal Action and the PAGA Action several days later. *Id.*

The Parties negotiated the detailed terms of the long-form settlement over the next several months, executed a binding Memorandum of Understanding on February 3, 2025, and executed the finalized long-form revised settlement agreement, on April 29, 2026. *Id.* at ¶ 24. The other GEICO Wage and Hour cases, except for the Reloj PAGA Action, resolved via a separate PAGA-only settlement also reached through the mediation on September 16, 2024, and approved on February 7, 2025. *Id.* at ¶ 23.

On or about January 15, 2025, Hon. Katherine Bacal granted the Parties' Stipulation to remove the Reloj PAGA Action from the GEICO Wage and Hour Cases. *Id.* at ¶ 25. The Complaint in the instant action was amended on January 31, 2025 to include the claims from the PAGA Action. ECF No. 269; *Id.* Consequently, the Settlement will resolve both the Federal Action and the PAGA Action. *Id.*

/ / /

/ / /

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

## III.    TERMS OF THE SETTLEMENT

### A. Non-Reversionary, Common Fund Allocations.

Defendant has agreed to pay a non-reversionary Gross Settlement Amount of $8,500,000 to settle all aspects of this Action. Settlement, ¶¶ 2(r), 17-19. Defendant will pay $8,500,000 into an interest-bearing Qualified Settlement Fund ("QSF") thirty (30) days following final approval of the Settlement. *Id.*, ¶ 29. Within thirty (30) days of the Effective Date, the Settlement Administrator will distribute all funds from the Qualified Settlement Fund. *Id.*, ¶ 40.

The Net Settlement Amount, which is the amount available to pay settlement awards to the Class Members, is defined as the Gross Settlement Amount less: the payments to the LWDA and to the aggrieved employees for their share of PAGA penalties ($127,500.00)[2]; any enhancement payments awarded to the Class Representative (up to $20,000.00 for Plaintiff Reloj); Class Counsel's costs (estimated not to exceed $50,000); opt-in deponent enhancement payments of $2,000.00 each to deposed plaintiffs who elect to execute a general release (up to $56,000.00 total, assuming 28 such plaintiffs); the Settlement Administrator's costs; and any attorneys' fees and costs awarded to Plaintiff's counsel (fees of up to $2,833,333.33, 1/3 of the Gross Settlement Amount, plus costs not found to be unreasonable by the Court). *Id.*, ¶ 2(s). The Net Settlement Amount to Participating Individuals, plus the Net PAGA Amount allocated to the aggrieved employees, is currently estimated to be at least approximately $ 4,570,041.67. *Id.*, ¶¶ 2(s), 2(r) and 2(t).

### B.  Class and Collective Definitions.

Settlement "Class Members" are "all current and former non-exempt hourly employees of Defendant working in a Covered Position throughout the State of California between October 8, 2018 and Preliminary Approval ("Class Period") who

---

[2] The Settlement Administrator shall pay 75%, or $95,625, of this amount to the LWDA, and 25%, or $31,875, the "Net PAGA Amount," to the Aggrieved Employees on a pro rata basis. Settlement, ¶¶ 2(v), 30(c), 34(b).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

do not opt out and did not release all claims referenced in the Class Release herein by the date of Preliminary Approval." *Id.* at ¶ 2(c). Covered Positions are "Auto Claim and/or Damage Adjusters (including individuals who adjust auto damage claims, including inspecting vehicles, preparing the initial estimate and any supplements, evaluating GEICO's portion of liability, and settling negotiating and paying the claim) who work in California." *Id.* at ¶ 2(h). A complete list of covered positions is included in the Settlement. *Id.* Defendant represents that as of May 31, 2024, there were approximately 859 Class Members. *Id.* at ¶ 2(b).

Collective Members or "Opt-in Plaintiffs" are "persons who opted in to the collective for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") in the Federal Action before the cutoff date, which was conditionally certified on March 30, 2023, and have not withdrawn their consent. *Id.* at ¶ 2(g). There are presently 249 Collective Members.

"Aggrieved Employees" are all current or former non-exempt, hourly employees who work, or have worked, for Defendant in a Covered Position between October 2, 2019 and Preliminary Approval ("PAGA Period"). *Id.* at ¶ 2(b). Defendant represents that as of February 25, 2025, there were approximately 835 Aggrieved Employees. *Id.* at ¶ 2(b).

Together, Class Members who do not opt out and Collective Members are "Participating Individuals." *Id.* at ¶ 2(w). Participating Individuals will be bound by and eligible to share in the Settlement. *Id.* at ¶ ¶ 2(r), 18, 32, 33, 37.

### C. Allocation and Awards.

The entire Net Settlement Amount will be distributed to Participating Individuals on a *pro rata* workweek and/or pay period basis. The Net PAGA Amount will be distributed separately to Aggrieved Employees in accordance with the PAGA allocation. Settlement, ¶¶ 32-34.

The Net PAGA Amount will be distributed on a pro-rata basis. Any Aggrieved Employee shall be eligible to receive a *pro rata* portion of the Net PAGA Amount

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

based on his or her pay periods employed by Defendant in California during the time period between October 2, 2019 and the date of Preliminary Approval of the Settlement. *Id.* at ¶ 34(b)(i).

Class Members shall receive a *pro rata* portion of the Net Settlement Amount according to the following formula:

    i. One (1) share of the Net Settlement Amount for each week during which the Participating Individual performed work for Defendant in the state of California between October 8, 2018 and Preliminary Approval.

    ii. One (1) additional share of the Net Settlement Amount for each week during which the Participating Individual performed work for Defendant in the state of California between October 8, 2020 and Preliminary Approval.

    iii. A flat seven (7) additional shares of the Net Settlement Amount Any Participating Individual whose employment with GEICO terminated between October 8, 2018 and Preliminary Approval.

*Id.* at ¶ 34. The total number of settlement shares for all Participating Individuals will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Participating Individual's number of settlement shares to determine the Participating Individual's *pro rata* portion of the Net Settlement Amount. *Id.*

For tax purposes, payments from the Net PAGA Amount will be counted as penalties. The remainder of each Settlement Award will be allocated twenty-five percent (25%) as wages, and seventy-five percent (75) as penalties and interest. *Id.* at ¶ 37. Participating Individuals shall be issued an IRS Form W-2 for the portions of the Settlement Awards that are allocated to wages, and IRS Form 1099 for the portions of the Settlement Awards that are allocated to penalties and interest. *Id.* Settlement Awards will be paid out to Participating Individuals subject to reduction for all employee's share of withholdings and taxes associated with the wage-portion of the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

Settlement Awards. *Id.* Defendant will pay the employer's share of all required FICA and FUTA taxes on the wage portions of the Settlement Awards. *Id.*

Class Members shall have thirty-five (35) days to opt out or object to the settlement, in writing. *Id.*, ¶¶ 2(u), 23-24. Class Members may also dispute the workweeks used to calculate their Settlement Award payments by the Notice Deadline. *Id.*, ¶¶ 2(u), 22.

Any funds from checks that are returned as undeliverable or are not negotiated within 180 calendar days after issuance will either be redistributed to those participating Class Members or be delivered to a mutually agreeable *cy pres* beneficiary. *Id.* ¶ 42.

### D. Scope of Releases.

Upon final approval, all Class Members who do not timely opt out shall release Defendant and the Releasees[3] from any and all non-FLSA claims that were alleged or could have been alleged in the Operative Complaint based on the factual allegations contained therein, arising during the period from October 8, 2018 through the date of Preliminary Approval ("Class Period").

The released claims are limited to claims arising under California law that share the same factual predicate as the Operative Complaint, including: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide compliant meal periods; (4) failure to provide compliant rest periods; (5) failure to maintain accurate employment records; (6) failure to timely pay wages during employment; (7) failure to timely pay wages upon separation; (8) failure to reimburse necessary

---

[3] "Releasees" or "Released Parties" means Defendant and its present and former parent companies, subsidiaries, affiliated companies or entities, and any of their shareholders, affiliates, and owners, members, joint employers, representatives, officers, directors, employees, agents, attorneys, insurers, predecessors, successors, and assigns, as well as any individual or entity that could be liable for any of the Released Claims. Settlement at ¶2(y).

business expenses; and (9) failure to provide accurate wage statements, in each case under the California Labor Code and applicable IWC Wage Orders. This release is expressly limited to claims arising from the facts alleged in the Operative Complaint and does not extend to claims based on facts not alleged therein.

Opt-In Plaintiffs who do not request exclusion shall release the Releasees from claims under the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, and 211, that were alleged or could have been alleged in the Operative Complaint based on the factual allegations therein, arising during the Class Period.

Upon final approval, Plaintiff, acting in his representative capacity on behalf of the State of California and the LWDA, shall release, on behalf of the LDWA, claims for civil penalties under PAGA that were alleged in the Operative Complaint and arise from the same factual predicate during the PAGA Period.

This PAGA release is limited to claims for civil penalties recoverable on behalf of the LWDA and does not release or extinguish any individual claims for damages held by Class Members or other Aggrieved Employees.

Named Plaintiff Conrad Reloj, in consideration for the service award, shall execute a general release of all known and unknown claims, including a waiver of California Civil Code § 1542. Settlement at ¶19. No other Class Member shall be required to provide a general release as a condition of participating in the Settlement. *Id* at ¶20.

### E. Settlement Administration.

The Parties shall agree to a settlement administrator to administer the Settlement. *Id.*, ¶ 2(bb). The administrator will distribute the Notice of Settlement via mail, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, and prepare and issue all disbursements to Class Members, the LWDA, Plaintiff Reloj, Plaintiff's counsel, and applicable state, and federal tax authorities. *Id.*, ¶¶ 21(b)-(h), 38. The Administrator will establish a settlement website that will allow Class Members to view the Class Notices (in generic

form), the Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Settlement. *Id.*, ¶ 21(b). The Administrator will also establish a toll-free call center for telephone inquiries from Class Members. *Id.*

## IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS

A class may be certified under Rule 23(b)(3) if (1) the class be so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact be common to the class; (3) the claims or defenses of the class representative be typical of the claims or defenses of the class; (4) the class representative and class counsel be able to fairly and adequately protect the interests of all members of the class; (5) common questions of law or fact predominate over any individual questions; and (6) class treatment is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(a) & (b)(3). Applying this standard, courts routinely certify classes of employees who have suffered wage-and-hour violations under wage-and-hour laws.[4] Here, the Class meets all of these requirements and should be conditionally certified.

### A. The Class is Numerous and Ascertainable.

While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy*

---

[4] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* No. C 17-06874 WHA, 2018 WL 6618280, at \*7 (N.D. Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage violations); *Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at \*14 (W.D. Wash. Aug. 16, 2006) (certifying Washington Rule 23 class in a case involving off-the-clock, overtime, and meal break violations under Washington law); *Chastain v. Cam*, No. 3:13-cv-01802-SI, 2016 U.S. Dist. LEXIS 52092, at \*29 (D. Or. Apr. 19, 2016) (certifying Oregon Rule 23 class and denying FLSA decertification in a case asserting off-the-clock and unpaid meal breaks); *Smith v. Family Video Movie Club, Inc*., 311 F.R.D. 469, 483 (N.D. Ill. 2015) (certifying Illinois Rule 23 class in a case asserting overtime pay rates failed to include commission payments and off-the-clock for delivering bank deposits).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

*Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). At approximately 892 members, the Class well exceeds this benchmark, and is large enough that joinder is impracticable. Cottrell Decl., ¶ 38. The Class Members may be readily identified from Defendant's payroll records. Cottrell Decl., ¶ 26.

### B. Plaintiff's Claims are Typical.

"Under … [Rule 23(a)(3)'s] permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, *supra*, 150 F.3d at 1020. Plaintiff possesses and asserts the same claims asserted on behalf of the Class, arising from the same alleged illegal policies and practices that form the basis of the claims asserted in this case. Depositions, interviews with Class Members, and review of timekeeping and payroll data confirm that Class Members were subjected to the same alleged illegal policies and practices to which Plaintiff was subjected. Cottrell Decl., ¶ 27. Thus, the typicality requirement is also satisfied.

### C. Plaintiff and Class Counsel Will Adequately Represent the Class.

Rule 23(a)(4) is satisfied if Plaintiff demonstrates, "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461 at 469 (E.D. Pa. 2000). Plaintiff's claims are in line with the claims of the Class, and Plaintiff's claims are not antagonistic to the claims of Class Members. *See generally,* First Amended Complaint, ECF 269; Cottrell Decl., ¶ 28. Plaintiff has prosecuted this case vigorously for over three years with the interests of the Class Members in mind. Moreover, Class Counsel possess extensive experience in class action and employment litigation, including wage-and-hour class actions, and do not have any conflict with the Class. *Id*.

### D. This Case Presents Common Questions of Law and Fact.

The commonality requirement of Rule 23(a)(2) is met if there is at least one

common question or law or fact. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Id.* Here, the common nucleus of policies, practices, and courses of conduct give rise to multiple common questions of law and fact.

Plaintiff alleges that Class Members, Adjusters who work in California, have substantially similar job duties to process and manage insurance claims in California. First Amended Complaint., ECF 269, ¶ 45; Cottrell Decl., ¶ 29. Plaintiff alleges that Class Members are subject to the same policies and practices concerning work assignments and expectations, performance management, scheduling and timekeeping, compensation polices and systems, and meals and rest breaks. First Amended Complaint., ECF 269, ¶¶ 24-38; Cottrell Decl., ¶ 29. Plaintiff alleges that these common policies, practices, and course of conduct "cause Plaintiff and the California Class members to sustain the same or similar injuries and damages." First Amended Complaint., ECF 269, ¶ 53; Cottrell Decl., ¶ 29.

These common circumstances give rise to common questions of law and fact, including: (a) whether Defendant fails to authorize and permit, make available, and/or provide California Class members meal and rest periods to which they are entitled in violation of the Labor Code and Wage Orders and in violation of Business and Professions Code §§ 17200 et seq.; (b) whether Defendant fails to compensate Class members for all hours worked, including minimum wages and overtime compensation, in violation of the Labor Code and Wage Orders, and in violation of Business and Professions Code §§ 17200 et seq.; (c) whether Defendant has a policy and/or practice of requiring Class members to perform work off-the-clock and without compensation; (d) whether Defendant fails to provide Class members with timely, accurate itemized wage statements in violation of the Labor Code and Wage Orders; (e) whether Defendant fails to pay Class members all wages due upon the end of their employment in violation of the Labor Code and Wage Orders and in violation of

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

Business and Professions Code §§ 17200 et seq.; and (f) the proper formula for calculating restitution, damages, and penalties owed to Plaintiff and the Class. *Id.*

### E. The Rule 23(b)(3) Requirements for Class Certification are Met.

These common questions predominate over any individualized questions concerning the Class. "The predominance analysis under Rule 23(b)(3) … tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang, supra,* 737 F.3d at 545 (internal quotations omitted). Here, the Class is entirely cohesive because resolution of Plaintiff's and Class Members' claims hinges on the uniform policies and practices of Defendant, rather than treatment the Class Members experienced on an individual level. Cottrell Decl., ¶ 30. As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendant's uniform policies, and would not require inquiries specific to individual class members. *Id.*

Further, the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. *Id.,* ¶ 31. To determine whether the class approach is superior, courts are to consider: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).  Here, the Class Members do not have a strong interest in controlling their individual claims. The action involves hundreds of workers with very similar, but relatively small, claims for monetary injury. Cottrell Decl., ¶ 31. If the Class Members proceeded on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. *Id.* Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the

same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations. *Id*. In addition, principles of judicial economy and efficiency are well-served by concentrating this litigation in this court and in a single proceeding, as Plaintiff has been litigating these issues for approximately four (4) years before this Court, and the Court has already conditionally certified the FLSA collective action.

The issues raised by the present case are much better handled collectively by way of a settlement. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous identical cases. Accordingly, class treatment is efficient and warranted, and the Court should conditionally certify the Class for settlement purposes.

## V. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE.

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004).

The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Otey*, 2015 WL 6091741, at *4. Before making such a finding, the Court must consider whether (1) class representative and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate in light of (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement made in connection with the proposal; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoted source omitted) (enumerating additional non-exhaustive factors that are to be considered for purposes of granting final approval of a class settlement). "While Rule 23(e) does not mandate that courts consider these same factors for purposes of determining whether preliminary approval is warranted, doing so often proves useful given the role these factors play in final approval determinations." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS 12812, at *6 (E.D. Cal. Jan. 22, 2022).

Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Courts apply a presumption of fairness "if the settlement is

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### A. The Settlement Provides Robust Monetary Relief to the Class.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice,* 688 F.2d at 623; *e.g. Andrews v. Prestige Care, Inc.*, Case No. 2:18-cv-00378-JAM-KJN (Dkt. No. 24, Mar. 24, 2020; Dkt. No. 32, July 14, 2020) (Mendez, J.) (preliminarily and finally approving settlement representing 17.54% to 69.74% of the realistic and maximum total damage calculations); *Viceral v. Mistras Grp., Inc., Case No.* 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014)(9.1% of "the total value of the action" is within the range of reasonableness).

The non-reversionary Gross Settlement Amount of $8,500,000 represents approximately 65% of the total estimated unliquidated unpaid overtime damages, 70% of the estimated meal and rest break damages, and 60% of the estimated PAGA penalties (including derivative penalties) that Plaintiff's counsel calculated, exclusive of attorneys' fees and costs. It represents approximately 20% of class damages resulting from substantive claims, according to Class Counsel's maximum exposure

analysis.[5]

Plaintiff's Counsel based their exposure analysis and settlement negotiations on extensive formal and informal fact discovery (including payroll and timekeeping data), as well as expert report prepared by the Employment Research Corporation in anticipation of class certification and trial. Cottrell Decl., ¶ 33. Based on the Employment Research Corporation's survey of over 138 respondents, Plaintiff's counsel obtained average frequency and hours of off-the-clock work and missed or non-compliant meal and rest periods. These figures were used in conjunction with annual workweek counts and average rates of pay for Class Members, to estimate damages for off-the-clock work (including both straight time and overtime) and premiums for missed or non-compliant meal and rest breaks. *Id*., ¶ 33. Based on these inputs, Class Counsel assumed 1.25 hours of unpaid straight time and 1.8 hours of unpaid overtime per week for a combined 3.05 hours of off-the-clock time per week, and assumed that employees missed or received non-compliant meal periods on 50% of days and missed or received non-compliant rest periods on 50% of days, resulting in a meal or rest premium for every day of work. *Id*., ¶ 33.

Using these assumptions and further assuming that Plaintiff and the Class Members would certify all of their claims and prevail at trial, Plaintiff's counsel calculated the total potential substantive exposure if Plaintiff fully prevailed on all of his claims at approximately $43,526,731 *Id*., ¶ 34. These figures are based on Plaintiff's assessment of a best-case-scenario. To obtain such a result at trial, Plaintiff would have to, at the minimum: (1) certify all claims and withstand any decertification motions; (2) prevail on the merits on all claims; (3) prove that Defendant acted knowingly or in bad faith; and (4) prove that all Class Members experienced the violations at the levels described above for every week. *Id*.

---

[5] This estimate excludes liquidated damages, derivative claims for waiting time penalties and wages statements, and interest.

The reasonableness of the Settlement is further supported by the fact that it provides an average recovery of approximately $ 5,283.08 per Class Member.[6] *Id*., ¶ 35. This amount provides significant compensation to the Participating Individuals, and the Settlement provides an excellent recovery well within the reasonable standard when considering the difficulty and risks presented by expanding and uncertain litigation. *Id*. The final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the procedural posture of the Actions and the specific defenses asserted by Defendant, many of which are unique to this case. *See Officers for Justice*, 688 F.2d at 623.

The allocation structure was also informed by Defendant's litigation positions and defenses, which vary across time periods and claim types. These risks include disputes regarding timekeeping practices, variability in employee experiences, and defenses affecting earlier time periods. The Settlement's structure reflects these litigation risks and appropriately discounts claims subject to greater uncertainty. In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

Additionally, the allocation methodology accounts for differences in the relative strength and value of claims across the Class Period. The October 8, 2020 cutoff reflects the applicable statute of limitations period. Claims arising prior to that date are subject to greater litigation risks because they fall outside the limitations period, exposing them to potential time-bar defenses that would significantly diminish their recoverability. Work performed after October 8, 2020 is therefore weighted more heavily, as those claims are not subject to the same limitations exposure. As a result, damages associated with the post-cutoff period are reasonably expected to be higher and more readily recoverable. The allocation formula reflects these differences in risk and recoverable damages and therefore treats Class Members equitably relative to one another in accordance with Rule 23(e)(2)(D).

---

[6] The averages provided here assume all Class and Collective Members participate in the Settlement. Cottrell Decl., ¶ 35.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

## B. The Settlement Establishes a Fair and Equitable Distribution of the Settlement Proceeds Tailored to the Respective Claims of the Class and Collective.

To ensure fairness, the Parties agreed to allocate the settlement proceeds amongst Class and Collective Members in a manner that recognizes that amount of time that the particular individual was employed by Defendant in the applicable limitations period. Consistent with the approach approved under Ninth Circuit precedent, the Settlement seeks to reimburse Class Members based on the extent of their injuries. *Khoja v. Orexigen Therapeutics*, No. 15-cv-00540-JLS-AGS, 2021 U.S. Dist. LEXIS 230105, at *24 (S.D. Cal. Nov. 30, 2021) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.") (citing *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, 1994 WL 502054, at *1 (N.D. Cal. June 16, 1994)). The allocation method, which is based on the number of workweeks, will ensure that longer-tenured workers receive a greater recovery. Settlement, ¶ 36. The allocation formula also properly assigns additional weight to account for waiting time penalties for former employees under California Labor Code § 203, and wage statement penalties within a one-year statute of limitation, Cal. Lab. Code § 226.[7] Settlement, ¶ 36. The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner. Cottrell Decl., ¶ 36.

The allocation formula also assigns additional weighting to work performed after October 8, 2020. This weighting reflects differences in the litigation risk and

[7] *Falk v. Children's Hosp. L.A.*, 237 Cal. App. 4th 1454, 1469 (2015) (finding a one-year statute of limitation applied to wage statement claims that sought a penalty, rather than damages for injury). A court could find that a three-year statute of limitation applies to the extent the claims under Labor Code 226 seek damages for injuries resulting from non-compliant wage statements. Given the uncertainty of a ruling on this issue, the use of a one-year assumption is reasonable.

recoverability of those claims. Specifically, claims arising prior to October 8, 2020 may fall outside the applicable statute of limitations period (absent a finding of willfulness), exposing them to time-bar defenses that significantly diminish their value and recoverability. More practically, the COVID-19 had a significant impact on claim volume during this time period. As such, class and collective members were less likely to perform off-the-clock work during this time. Post-cutoff claims do not carry that same exposure and are therefore weighted more heavily to reflect their comparatively stronger litigation posture. As a result, damages attributable to work performed after October 8, 2020 are reasonably expected to be higher and more likely to be proven at trial while claims arising prior to October 8, 2020 are subject to greater litigation risk, including statute of limitations issues and defenses asserted by Defendant. The allocation formula reflects these differences in relative claim strength and value, and therefore treats Class Members equitably relative to one another based on the risks and recoverable damages associated with their Claims.

The treatment of the residual uncashed checks is also fair and reasonable. If the total residual amount equals or exceeds $95,000, the Administrator will make a second distribution to those Participating Individuals who cashed their Settlement Award check. Settlement, ¶ 42(b). If the residual is less than $95,000, it will revert to the *cy pres*. As *cy pres,* the parties have selected and propose Legal Aid at Work, which provides legal services assisting low-income, working families and promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities. Settlement, ¶ 42(a).[8]

The PAGA Penalties payment and distribution are also reasonable. The PAGA Penalties payment of $127,500 represents 1.5% of the gross settlement amount, well within the range PAGA settlements and allocations previously approved in California

---

[8] In the interests of transparency, Plaintiff's Counsel discloses that Joshua Konecky, a former named partner at SWCK, holds an unpaid board seat at Legal Aid at Work.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

district courts. *See E.g., Ahmed v. Beverly Health & Rehab. Servs., Inc.*, 2018 U.S. Dist. LEXIS 20460, 2018 WL 746393, at \*10 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement); *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at \*35-36 (E.D. Cal. 2012) (approving PAGA settlement of $7,500 or 0.14% of the total settlement); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 at \*14 (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement); *Garcia v. Gordon Trucking*, 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 at \*3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27% of the total settlement). Indeed, the LWDA has stated it "is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." *Ramirez v. Benito Valley Farms, LLC,* No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, 2017 WL 3670794, at \*3 (N.D. Cal. Aug. 25, 2017) (quoting from the LWDA response in *O'Connor v. Uber Technologies Inc.*, 201 F.Supp.3d 1110 (N.D. Cal. 2016)). The reasoning for this approach is multifaceted; however, one of the major concerns regarding PAGA settlements is that PAGA penalties may be reduced at a court's discretion. *See Gonzales v. CoreCivic of Tennessee, LLC,* 2018 WL 4388425, at \*6-9 (E.D. Cal. Sept. 13, 2018) ("A trial court's discretion to reduce PAGA penalties might be a reason to ultimately discount the value of PAGA claims, perhaps even significantly, in reaching a settlement.).

### C. The Extensive Discovery in this Action Enabled the Parties to Make Informed Decisions Regarding Settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at \*6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the

strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the extent of discovery weighs strongly in favor of approving the Settlement. The Settlement was reached as both cases were approaching trial. *See supra.* The Parties engaged in extensive formal and informal discovery. *See supra.* The well-developed factual record, extensive interviews, and robust expert analysis enabled Plaintiff's Counsel to assess the claims and potential defenses in both the class and PAGA actions, as well as the legal and factual issues that would arise if the cases proceeded to trial. Cottell Decl. at ¶¶ 10-16. Plaintiff's Counsel's liability and damages evaluations were premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on Class Members' pay. *Id.*, at ¶ 22. Ultimately, facilitated by mediators Lisa Klerman, Stephen Marcus, Hon. Michael Marcus (Ret.), and Hunter Hughes the Parties used this information and discovery to fairly resolve the litigation. *Id.*, at ¶ 22.

### D. Litigating the Action Would Delay Recovery, and Would be Expensive, Time Consuming, and Risky.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. *Id.*, ¶¶ 32-37.

Litigating the class, representative, and collective action claims would likely require a trial of at least two weeks, including the presentation of percipient and expert witnesses, the consideration, preparation, and presentation of voluminous documentary evidence and expert reports, and the preparation of and argument of multiple motions *in limine*. Moreover, while the parties have stipulated to resolve the PAGA claims through this Settlement, trial of those claims would likely require a separate trial in state court, where the claims had been pending. Additional depositions and expert discovery remain to be completed in the PAGA Action. All told, Plaintiff's Counsel estimates that trial of the class, representative, and collective actions (which Defendant would vigorously oppose if this Settlement Agreement were not approved),

would add more than $1,000,000 in fees and costs.

Further litigation would entail substantial risks and would not guarantee a better result. At the time of the parties' successful mediation, Plaintiffs' motion for class certification and Defendant's motion to decertify the collective action were fully briefed and awaiting resolution.[9] While Plaintiff is confident this case merits certification, Defendant has argued vigorously to the contrary. In addition, at trial Plaintiff would also encounter challenges in proving Defendant's liability on the merits for various other reasons. Based on Defendant's contentions in its motion to decertify the collective and its opposition to Plaintiff's motion for class certification, Defendant would doubtless dispute each of the claims on the merits. Plaintiff would further likely need to defend against motions for summary judgment, and, if successful, a motion for judgment as a matter of law, as well as potential appeals.

Further, establishing liability does not guarantee a recovery of the maximum exposure amount. Plaintiff's damages analysis assumed that Class members worked over 3 hours off-the-clock per week and experienced a meal or rest break violation every day. It is, however, possible that the jury could find lower rates of off-the-clock work and meal and rest break violations. In addition, Defendant would likely argue that section 260 of the FLSA excuses it from paying liquidated damages under the FLSA. 29 U.S.C. 260 ("if the employer shows to the satisfaction of the court that the

---

[9] *See, e.g., In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011); *Forrester v. Roth's I. G. A. Foodliner, Inc.,* 475 F.Supp. 630, 634 (D Or 1979) (employees maybe estopped from "off-the-clock" claims when they have deliberately underreported their hours and/or routinely signed payroll records, certifying them to be true and accurate); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 392 (N.D. Ill. 2011) (certifying Illinois Rule 23 subclass asserting off-the-clock work performed during training and orientation but denying certification of subclass asserting off-the-clock work performed pre- and post- shift).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof."). With respect to the PAGA, Plaintiffs' exposure analysis assumes stacking; however, there is a chance that the Court would decline to stack on derivative violations for an employer that maintains comprehensive, facially compliant policies and trainings.[10] Moreover, Defendant would likely argue that the Court should exercise discretion to cut PAGA penalties substantially. *Gonzales v. CoreCivic of Tennessee, LLC,* 2018 WL 4388425, at \*6-9 (E.D. Cal. Sept. 13, 2018) ("A trial court's discretion to reduce PAGA penalties might be a reason to ultimately discount the value of PAGA claims, perhaps even significantly, in reaching a settlement.)

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members. Such a result will benefit the Parties and the court system. It will bring finality to over three years of arduous litigation and will foreclose the possibility of expanding litigation.

### E. The Settlement is the Product of Informed, Non-collusive, and Arm's Length Negotiations Between Experienced Counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, *supra*, 150 F.3d at 1027; *Wren*, *supra*, 2011 WL

---

[10] *Smith v. Lux Retail N. Am., Inc.*, No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562, at \*9 (N.D. Cal. June 13, 2013) ("For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted five (count them, five) separate labor code violations that could lead to statutory penalties. One is a penalty for failure to pay overtime at the appropriate rate []. Another is for denying employees minimum wage and overtime []. But is it plausible that we would really pile one penalty on another for a single substantive wrong?"). Even without stacking derivative violations, a given employee may present multiple PAGA violations (*e.g.*, for meal and rest violations, off-the-clock work, and failure to reimburse) for a particular pay period. There is a chance that the Court would decline to assess multiple violations per pay period per employee.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

1230826, at *14. This presumption is strengthened when counsel are well-qualified to represent the proposed class and collective, based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action. *Wren*, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. The Parties participated in four separate mediation sessions before skilled mediators with many years of experience mediating employment matters. Cottrell Decl., ¶ 23 The Parties then spent several months negotiating the long form settlement agreement over numerous drafts. *Id.*, at ¶ 24. Plaintiff is represented by experienced and respected litigators of representative wage-and-hour actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Class Members. *Id.*, ¶ 40.

### F. The Service Awards are Reasonable, and the Class Representative Have Adequately Represented the Classes.

Named plaintiff in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[11]

The enhancement payment of up to $20,000 for Plaintiff Reloj is intended to compensate him for broader release and for the critical role he played in this case and in the PAGA Action, and the time, effort, and risks – including risks to future employment – he undertook in helping secure the result obtained on behalf of the Class Members, the Collective, and the State of California. Declaration of Conrad Reloj, ¶ 8. As discussed in his declaration, Plaintiff has put substantial time and effort

---

[11] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

into this case for over three years, as its sole standard-bearer, and has prioritized and sacrificed in the interest of the class. Reloj Decl. ¶ 21. Plaintiff's proposed enhancement payment represents a mere 0.24% of the gross settlement amount, well within payments approved in similar cases.[12]

The service awards to Deposed Opt-in Plaintiffs are also fair and reasonable. Deposed Opt-ins Plaintiffs who elect to receive the $2,000 service award will agree to a full release of claims. This additional payment is reasonable compensation for these individuals, who opted into the case, participated in discovery, took on additional risk and inconvenience of sitting through a deposition, and entered into a full general release. If all 28 Deposed Opt-In Plaintiffs elected to receive the service payment, the total $56,000 would equal a mere approximately 0.66% of the Gross Settlement Amount. The resulting total service awards would still be well within the range of potential approval. *e.g. Palmer v. Pier 1 Imps.* 2018 U.S. Dist. LEXIS 122899, at *16 (C.D. Cal. July 23, 2018) (in a small wage and hour class action, approving service award of 3.5%); *Quintanilla v. A & R Demolition, Inc.*, No. NO. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *9-10 (S.D. Tex. May. 7, 2008) ($26,000 of $180,000 class fund in FLSA collective action settlement, or 14.4%).

Defendant does not oppose these service awards (agreeing to the Deposed Opt-

[12] *See, e.g.*, *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.,* No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331, at *32 (E.D. Cal. Aug. 21, 2019) (approving $10,000 service awards each to two class representatives, which amounted to 0.6 percent of the overall settlement amount of $3,400,000); *Soto*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000 and $10,000 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service award for each class representative in FLSA and California state law representative wage and hour action); *Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244, 1265 (C.D. Cal. 2016) (awarding service award of $10,000, approximately 100 times average the award and less than 0.25 percent of gross settlement). *See also, e.g., Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

in Plaintiff General Release Payment.) The service awards are fair and reasonable and should be approved.

### G. The Requested Attorneys' Fees and Costs are Reasonable and Plaintiff's Counsel Have Adequately Represented the Classes.

In their fee motion to be submitted in advance of final approval, Plaintiff's Counsel will request up to a maximum of $2,833,333.33 in fees, representing one-third of the Gross Settlement Amount, plus reimbursement of costs of approximately up to $875,000 for both cases. Cottrell Decl., ¶ 39. Plaintiff's counsel will provide their lodestar information with their fee motion, which will demonstrate the reasonableness of Plaintiff's Counsel's fee request. *See* Cottrell Decl., ¶ 39; *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award").

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.[13] However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482 at 491 (E.D. Cal. 2010) (citation omitted); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts customarily approve payments of attorneys' fees amounting to one-third of the

---

[13] *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, *supra*, 150 F.3d at 1029; *Staton*, *supra*, 327 F.3d at 952; *see also, Chu v. Wells Fargo Investments, LLC*, Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645, at *4 (N. D. Cal. Feb.16, 2011) (percentage-of-the-fund method is appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

common fund in comparable wage and hour class actions.[14]

Here, given the excellent results achieved, the effort expended litigating the Action, including the challenges of litigating this case, an upward adjustment from the benchmark is warranted. Plaintiff's Counsel undertook all the risks of this litigation on a completely contingent fee basis. Cottrell Decl., ¶ 40. Defendant's vigorous and skillful defense confronted Plaintiff's counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.* Nevertheless, Plaintiff and his counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class and collective recovery. *Id.*, ¶ 40. To date, Plaintiff's Counsel has invested over 4,000 hours in the litigation of this case, and additional 440 hours in the litigation of the related PAGA Action. *Id.*

Class Counsel will also request reimbursement for their litigation costs. Cottrell Decl., ¶ 39. "The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of class action settlement." *Chery v. Tegria Holdings LLC*, No. C23-612-MLP, 2024 U.S. Dist. LEXIS 221382, at *22 (W.D. Wash. Dec. 6, 2024) (citing *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009)). In addition, the FLSA specifically provides an award for costs for "out-of-pocket expenses that would normally be charged to a fee paying [sic] client." *Weist v. City of Davis*, No. 2:16-cv-01683-LEK, 2021 U.S. Dist. LEXIS 28678, at *13 (E.D. Cal. Feb. 12, 2021)(quoting *Flores v. TFI International Inc.*, 2019 U.S. Dist. LEXIS 65754,

---

[14] *See, e.g., Jones, et al.,* Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Soto*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

2019 WL 1715180 at *11(N.D. Cal. April 17, 2019)); 29 U.S.C. § 216(b). Courts assess costs awards for reasonableness. *See Weist*, 2021 U.S. Dist. LEXIS 28678, at *13; *Gonzalez-Rodriguez v. Mariana's Enters*., No. 2:15-cv-00152-JCM-PAL, 2016 U.S. Dist. LEXIS 92198, at *28 (D. Nev. July 13, 2016).

Here, because both cases settled in the lead-up to trial, Plaintiff's Counsel advanced substantial costs in both this case and the PAGA Action. The majority of these expenses were for electronically stored information ("ESI") management and document storage costs;[15] expert work; mediation costs for four mediations; and deposition costs.

Such expenses are routinely reimbursed in class settlements. Courts have determined a wide range of costs to be reasonable, including court costs, filing fees, mediation fees, and various administrative costs such as copying, printing, postage, and electronic document hosting. *Cohen v. Peloton Interactive, Inc.,* No. CV 22-1425-MWF (Ex), 2025 U.S. Dist. LEXIS 26583, at *12-13 (C.D. Cal. Feb. 12, 2025); *In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). "These are reasonable expenditures, particularly in a class action, which entails higher costs to maintain the action and provide notice to class members." *Cohen*, 2025 U.S. Dist. LEXIS 26583 at *12.

Other significant costs are considered reasonable as well, such as expert, consultant, and investigator fees, meals, hotels, and transportation costs, and computerized research costs. *Cohen,* 2025 U.S. Dist. LEXIS 26583 at *12-13; *In re Immune Response*, 497 F. Supp. 2d at 1177. Courts in the Ninth Circuit routinely allow for the recovery of expert fees in FLSA settlements. *McKinnon v. City of Merced*, No. 1:18-cv-01124-, 2020 U.S. Dist. LEXIS 151361, at *58 (E.D. Cal. Aug. 19,

---

[15] As discussed in the Declaration of Ryan A. Bonner, these costs were reasonable and necessarily incurred in light of the extraordinary volume of the productions and the measures necessary to process and analyze this data. Declaration of Ryan Bonner, ¶¶ 4-6.

2020)(citing *Selk v. Pioneers Mem'l Healthcare Dist.,* 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016)(awarding the recovery of expert fees, filing fees, and deposition costs in FLSA action)); *see also Smothers v. NorthStar Alarm Servs., LLC,* No. 217CV00548KJMKJN, 2020 U.S. Dist. LEXIS 56473, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (in final approval of an FLSA settlement, awarding the recovery of expert fees, transcript fees, mediation costs, and other costs).

In cases where document management fees are incurred, Courts allow for recovery of such costs. *Stevens v. Safeway Inc.*, No. CV 05-01988 MMM (SHx), 2008 U.S. Dist. LEXIS 146522, at *19 (C.D. Cal. May 30, 2008) (approving document management costs when supported with detailed invoices); *Pacificorp v. Nw. Pipeline GP*, No. 3:10-cv-00099-PK, 2012 U.S. Dist. LEXIS 174593, 2012 WL 6131558, at *7-8 (D. Or. Dec. 10, 2012) (stating that "courts have allowed recovery for electronic storage of documents generally"); *D.G. v. Yarbrough*, No. 08-CV-074-GKF-FHM, 2013 U.S. Dist. LEXIS 46618, at *26 (N.D. Okla. Mar. 31, 2013) (awarding document storage costs because "cases involving voluminous electronic document production necessarily generate such costs").

Class Counsel's efforts resulted in an excellent settlement, and the fee and costs award should be preliminarily approved as fair and reasonable.

**H. The Proposed Notices of Settlement and Claims Process Are Reasonable.**

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, *supra*, 361 F.3d at 575.

The Notices of Settlement and manner of distribution negotiated and agreed upon by the Parties are "the best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). All Class Members will be identified and the Notices will be mailed directly to each Class Member. Settlement, ¶21(b). The proposed Notices are clear and straightforward and provide information on the nature of the action and the proposed Class and Collective, the terms and provisions of the Settlement, and the monetary awards that the Settlement will provide Class Members. *See* Settlement Ex. A. In addition, the Parties will provide a settlement website that provides a generic form of the Notices, the Settlement Agreement, and other case related documents and contact information. *Id*.

The proposed class Notice fulfills the requirement of neutrality in class notices. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the Settlement, including an explanation of how the settlement amount will be allocated between the Named Plaintiff, Class Counsel, the Settlement Administrator, and the Class or Collective Members, as applicable, in an informative, coherent and comprehensible manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004).

This proposed Notices also clearly explain the scope of the releases, including the distinction between Rule 23 class claims, the FLSA collective claims, and the PAGA component of the Settlement, ensuring that Class Members understand the legal effect of participating in, opting out of, or objecting to the Settlement, without the need to refer to the PAGA notice and/or PAGA letter.

The proposed class Notice clearly explains the procedures and deadlines for

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

requesting exclusion from the Settlement, objecting to the Settlement, the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. Settlement, Exs. A. Pursuant to Rule 23(h), the proposed Notices also set forth the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the procedure by which Class Counsel will apply for them. *Id.* The Notices clearly state that the Settlement does not constitute an admission of liability by Defendants. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id*. Accordingly, the Notices comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311, Settlement Notice, § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all Class Members receive the Notices. Before mailing, Defendants will provide to the administrator a database that contains the names, last known addresses, last known email addresses (if any), and social security numbers of each Class Member, along with information sufficient to calculate the respective settlement shares. Settlement, ¶ 2(f). Any Settlement Notice returned to the Settlement Administrator with a forwarding address shall be re-mailed within three (3) business days following receipt of the returned mail. Settlement, ¶ 21(e). If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Class Member involved, and shall re-mail the Notice of Settlement. *Id.*

Class Members will have 35 days from the mailing of the Notices to opt-out or object to the Settlement. *Id.*, ¶¶ 2(u), 24. Any State Class Member who does not submit a timely request to exclude themselves from the Settlement will be deemed a Participating Individual whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in

the case. *Id.*, ¶¶ 2(u), 2(x), 24.

Administration of the Settlement will follow upon the Court's issuance of final approval of the Settlement. *Id., ¶¶* 2(l), 30, 41. Participating Individuals will have 180 days to negotiate their checks. *Id., ¶* 42.

Because the proposed Notices clearly and concisely describe the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notices will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Notices should be preliminarily approved.

## VI.    THE SETTLEMENT MEETS THE CRITERIA FOR APPROVAL UNDER THE FAIR LABOR STANDARDS ACT.

While in the FLSA context, court approval is required for settlements, the Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Most courts in this Circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative collective members within the meaning of 29 U.S.C. § 216(b), and then evaluate the settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues...that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354; *Otey*, 2015 WL 6091741, at *4.

This Court has already granted conditional certification of the FLSA collective action, and thus has found that Members of the Collective Action are similarly

situated. *See* ECF 101. 249 Collective Members have filed and not withdrawn their opt-in forms to join the Collective Action. *See* Cottrell Decl., ¶ 12. Collective Members who previously filed consent forms and have not opted-out remain part of the certified collective. Any additional individuals who wish to participate in the FLSA settlement must submit a written consent to join, consistent with 29 U.S.C. § 216(b). The Settlement does not rely on check negotiation alone as a means of obtaining consent. Participating Individuals are informed of this in the Class Notice, as well as by a statement affixed to the settlement check. *Id*; *see also,* Settlement Ex. A.

For the same reasons that the Settlement is fair, reasonable, and adequate under Rule 23, it is a fair and reasonable resolution under the FLSA. *Millan v. Cascade Water Servs.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015) ("a Court has a 'considerably less stringent' obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement."); *Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018) ("[t]he requirements for approval of a FLSA collective action settlement are less stringent . . . because persons who do not opt-in as parties to the FLSA collective action are not bound by the settlement."). The FLSA violations in this case are squarely in dispute and have been actively litigated, as demonstrated by, *inter alia*, Plaintiff's successful motion for conditional certification, Defendant's motion for decertification, and the discovery taken in this case. The Settlement provides a reasonable compromise, resulting in a significant individual recovery for Collective Members do not withdraw their consent to participate,[16] and should be approved.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully Requests that this Court 1)

---

[16] Collective members who opt-out will not have their FLSA claims dismissed with prejudice, and shall retain the right to pursue remedies under the FLSA.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

conditionally certify the class, 2) grant preliminary approval of the Settlement Agreement as to the Class, and 3) grant approval of the Settlement Agreement as to the Collective. Plaintiff further requests that in accordance with the schedule set forth in the Notice of Motion and Motion, the Court set a final approval and fairness hearing, and set the other deadlines proposed in the Motion.

Date: July 8, 2026          Respectfully submitted,

/s/ *Carolyn H. Cottrell*
Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Esther Bylsma (SBN 264208)
Robert E. Morelli, III (SBN 363123)
SCHNEIDER WALLACE
COTTRELL KIM LLP

*Attorneys for Plaintiff, the Collective, the Putative Class, Aggrieved Employees and the State of California*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system on July 8, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: July 8, 2026                                         /s/ *Carolyn H. Cottrell*
                                                                          Carolyn H. Cottrell

---

38

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE AND PAGA SETTLEMENT
*Reloj v. Government Employees Insurance Company Inc.*