UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONRAD RELOJ, individually and on behalf of all similarly situated,<br>Plaintiff,<br>v.<br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, INC. d/b/a GEICO,<br>Defendant. | Case No.: 21-cv-01751-MSB<br><br>**ORDER GRANTING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT** |

Presently before the Court is plaintiff Conrad Reloj's ("Plaintiff" or "Reloj") Renewed Motion for Preliminary Approval of Class Action, Collective Action, and Private Attorneys General Act ("PAGA") Action Settlement. (ECF No. 297.) For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

## I. BACKGROUND

### a. Factual Background

Reloj was employed by defendant Government Employees Insurance Company Inc. ("GEICO") for nearly twenty years as a non-exempt, hourly Auto Damage Adjuster in San Diego, California. (ECF No. 269 ¶ 15.) Plaintiff alleges that he and other similarly situated GEICO employees regularly worked more than eight hours per day, were routinely denied

timely and compliant meal and rest periods, and were not paid for all the hours worked, including minimum wages and overtime. (Id. ¶¶ 25-37.) Based on these allegations, Reloj also claims that GEICO failed to provide accurate wage statements and pay all wages due after termination of employment. (Id. ¶ 38.) Reloj asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), California Labor Code, and California Business and Professions Code § 17200 *et seq.* on his behalf and on behalf of similarly situated individuals. (See generally id. )

**b. Procedural Background**

On October 8, 2021, Reloj initially filed this action as a collective action under 29 U.S.C. § 216(b) and as a putative class action under Federal Rule of Civil Procedure 23.1. On March 31, 2023, the Court granted his motion for certification of a conditional collective action under 29 U.S.C. § 216(b) and on September 11, 2023, granted in part Defendant's summary judgment motion. (ECF Nos. 101, 166.) On April 18, 2024, Reloj filed a class certification motion, and on June 20, 2024, Defendant filed a motion to decertify the FLSA collective action. (ECF Nos. 219, 230.) During the pendency of these motions, and after four mediation attempts, the parties negotiated a settlement. (See ECF No. 259; ECF No. 282-1, "First Cottrell Decl." Ex. A Class, Collective, and PAGA Action Settlement Agreement and Release ("First Settlement Agreement") ¶ 7.) The Settlement included Reloj's state court action, Reloj v. Gov't Emps. Ins. Co. Inc., Superior Court of California, County of Alameda, Case No. 21cv003563, seeking relief under the California Private Attorneys General Act, Cal. Lab. Code §§ 2698 et seq. ("PAGA Action"). (See ECF No. 257 ¶ 3; First Settlement Agreement ¶ 2.a.)

Pursuant to the Settlement, Reloj filed an amended complaint in this action ("Federal Action"), which incorporated his claims from the PAGA Action. (See ECF No. 269, "Operative Complaint.") On April 16, 2025, Reloj filed a motion for preliminary settlement approval, (ECF No. 275); however, the Court denied preliminary approval of the proposed settlement agreement based on three categories of deficiencies with the information provided, (ECF No. 290). These categories were: (1) the agreement did not

treat class members equitably, and plaintiffs did not adequately explain such inequitable treatment of class members; (2) the release provisions had scopes that were both ambiguous and unlawful; (3) the agreement contained procedural provisions contrary to law. (Id.) On July 8, 2026, Reloj filed the instant Amended Motion for Preliminary Settlement Approval. (ECF No. 297.)

## II. TERMS OF THE SETTLEMENT AGREEMENT

The parties have submitted their revised proposed Class, Collective, and PAGA Settlement Agreement and Class Notice ("Revised Settlement Agreement") for the Court's review. (ECF No. 297-3.)

### a. Settlement Class and Collective

The "Settlement Class" is defined as "all current and former non-exempt hourly employees of Defendant working in a Covered Position throughout the State of California between October 8, 2018 and Preliminary Approval ('Class Period') who do not opt out and did not release all claims referenced in the Class Release . . . by the date of Preliminary Approval." (Revised Settlement Agreement ¶ 2.c.) Covered Positions include "Auto Claim and/or Damage Adjusters." (Id. ¶ 2.h.) GEICO estimates there are 892 members of the class ("Class Members"). (Id. ¶ 2.c.)

The "Collective Members" or "Opt-in Plaintiffs" include "all persons who opted in to the collective for violations of the FLSA in the Federal Action before the cutoff date, which was conditionally certified on March 20, 2023, and have not withdrawn their consent. (Id. ¶ 2.g.) There are an estimated 249 Collective Members. (ECF No. 297-1 at 8:13.)

The "Aggrieved Employees" includes "all current and former non-exempt, hourly employees who worked, or have worked, for Defendant in a Covered Position between October 2, 2019 and Preliminary Approval ("PAGA Period")." (Revised Settlement Agreement ¶ 2.b.) GEICO estimates there are 835 Aggrieved Employees. (Id.)

The "Participating Individuals" include Class Members who do not opt out, and Collective Members. (Id. ¶ 2.w.)

The parties agree that Schneider Wallace Cottrell Kim LLP will be appointed as Class Counsel. (Id. ¶ 2.d.)

**b. Settlement Amount**

To settle all aspects of this Action, GEICO will pay $8,500,000 (the "Gross Settlement Amount") into an interest-bearing Qualified Settlement Fund ("QSF") subject to the Escalator Clause.[1] (Id. ¶¶ 2.r., 29.) The amount will be distributed within thirty (30) days of the Effective Date as follows:

(i) $127,500.00 to the Labor and Workforce Development Agency ("LWDA") and to the Aggrieved Employees for their share of PAGA penalties, of which 75% ($96,625.00) will be distributed to the LWDA and 25% ($31,875.00, the "Net PAGA Amount") will be allocated to the Aggrieved Employees;

(ii) Up to $20,000.00 for Class Representative, Plaintiff Reloj;

(iii) A maximum of $50,000 for Class Counsel's litigation costs;

(iv) Opt-in deponent enhancement payments of $1,000.00 each;

(v) Settlement Administration costs to be paid from Gross Settlement Amount;

(vi) Plaintiff's attorneys' fees and costs in an amount not to exceed $2,833,333.33 (1/3 of the Gross Settlement Amount); and

(vii) The remaining Net Settlement Amount, plus the Net PAGA Amount, is estimated to be at least approximately $ 4,570,041.67. The entire Net Settlement Amount is to be distributed to Participating Individuals on a pro rata workweek and/or pay period

---

[1] The Escalator Clause states that if the number of workweeks between October 8, 2018 and May 31, 2024 exceeds 150,577 by more than 10%, then GEICO will increase the Gross Settlement Amount by a pro-rata dollar value equaling the number of workweeks exceeding 165,852.5 between October 8, 2018 and May 31, 2024. (Id. at ¶ 29.a.)

basis. The Net PAGA Amount will be allocated separately to Aggrieved Employees in accordance with the PAGA allocation.

(Id. ¶¶ 2a-2f, 34-37.)

**c. Settlement Notice and Administration**

The parties mutually agreed to use CPT Group, Class Administrators, as the Settlement Administrator for settlement distribution purposes. (Second Cottrell Decl. ¶ 37; see Revised Settlement Agreement ¶ 2.bb.) The Settlement Administrator will prepare, print, mail, and email the Settlement Notice to all Class Members. (Revised Settlement Agreement ¶ 21.b.) The Settlement Administrator will be responsible for calculating individual settlement payments, all applicable payroll taxes, withholdings, and deductions, and preparing and issuing all disbursements to Class Members, the LWDA, Plaintiff Reloj, Plaintiff's counsel, and applicable state and federal tax authorities. (Id. ¶ 21.b-h.) Additionally, the Settlement Administrator will establish a website, allowing Class Members to view the Class Notice (in generic form), the Revised Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval for the Settlement. (Id. ¶ 21.b.)

The proposed Notice contains detailed information about this action, including what the lawsuit is about, who is included in the settlement, what the terms of the settlement are, what the impact of the settlement is on a Class Member's rights, how to receive payment, how to object or to be excluded from the settlement, who is representing the class, how to get additional information, and when and where the final hearing will be held. (ECF No. 297-3, Ex. A "General Class Notice.") In explaining the terms of the settlement, the proposed Notice details how individual Settlement Payments are calculated for Class Members and Aggrieved Employees under PAGA. (Id. at 4-5.)

**d. Objections and Requests for Exclusion**

The Revised Settlement Agreement distinguishes between Settlement Class Members and Aggrieved Employees under PAGA regarding objection and exclusion

procedures. Aggrieved Employees under PAGA are prohibited from objecting or opting out of the Settlement. (Revised Settlement Agreement ¶¶ 23-24.)

Settlement Class Members may object to the Revised Settlement Agreement by filing a written statement to the Court, explaining the basis for the objection, citing legal authority and evidence in support of the objection, and indicating whether the objector intends to appear at the Final Approval Hearing. (Id. ¶ 23.) Class Members who wish to object to the Revised Settlement Agreement must file the written statement before the Notice Deadline. (Id.) If a Class Member or Opt-In Plaintiff requests to exclude themselves from the Settlement, they must mail a signed written statement to the Settlement Administrator, indicating they do not wish to participate or to be bound by the Settlement. (Id. ¶ 24.)

**e. Releases**

In exchange for Defendant's Gross Settlement Amount payment, Class Members who do not timely opt out of the Class release the following FLSA claims against the Defendant:

> any and all claims under the FLSA, including 29 U.S.C. §§ 206, 207 and 211 and that were pled or could have been pled based on or arising out of the factual predicates and/or allegations in the Action, including but not limited to those in the Operative Complaint, that arose between October 8, 2018 and the date of Preliminary Approval of this Agreement.

(Id. ¶ 18.a.)

The Class Members who do not request exclusion from the Revised Settlement Agreement shall release non-FLSA claims that could have been alleged in the Operative Complaint, including: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide compliant meal periods; (4) failure to provide compliant rest periods; (5) failure to maintain accurate employment records; (6) failure to timely pay wages during employment; (7) failure to timely pay wages upon separation; (8) failure to reimburse necessary business expenses; and (9) failure to provide accurate wage statements, in each

case under the California Labor Code and applicable Industrial Welfare Commission Wage Orders. (Id. ¶ 18.b.)

Additionally, the Class Representative generally releases Defendants from "claims arising from his employment relationship with Defendant, including, without limitation, claims for unpaid wages and liquidated damages, claims for discrimination, harassment, or retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000 et seq., the California Fair Employment and Housing Act, California Gov't Code Section 12900 et seq., and claims for violation of public policy." (Id. ¶ 19.)

Lastly, all Aggrieved Employees under PAGA are deemed to release "all claims for PAGA penalties that were alleged or could have been alleged, based on the PAGA Period of facts stated in the Operative Complaint." (Id. ¶ 18.c.)

## III. LEGAL STANDARD

Under Rule 23 of the Federal Rules of Civil Procedure, parties may not settle claims on a class-wide basis without court approval. Fed. R. Civ. P. 23(e). Rule 23(e) sets forth the procedures that courts must apply to a proposed settlement of class claims. These procedures include: (1) notice to the class; (2) if the settlement proposal would bind class members, approval by the Court only after a hearing and only on finding that it is fair, reasonable, and adequate based on specific considerations; (3) identification of any agreement made by the parties in connection with the settlement proposal; (4) if the class action was previously certified under 23(b)(3), a new opportunity for class members to request exclusion; and (5) the opportunity for class members to object to the proposed settlement.

Where, as here, the parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In evaluating the propriety of certification for purposes of class-wide settlement, the Court must first assess whether a class exists. Id. Second, the Court must "carefully consider whether [a] proposed settlement is fundamentally fair, adequate, and

reasonable, recognizing that it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness[.]" Id. (internal quotations and citation omitted).

As set forth in Rule 23(e), the Court's assessment of whether the proposed settlement is fair, adequate, and reasonable requires the Court to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorney fees, and (iv) the terms of the settlement agreement; and (D) the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). See also In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("As noted in the Manual for Complex Litigation, . . . 'if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'") (citation omitted). For the Court to reach a determination that preliminary approval is appropriate, "the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007).

If the Court preliminarily certifies the class and finds the proposed settlement fair, adequate, and reasonable, it then appoints a class representative or representatives and class counsel.

//

//

//

## IV. CONDITIONAL CLASS CERTIFICATION UNDER RULE 23[2]

The Court first evaluates the propriety of class certification for purposes of class-wide settlement. Plaintiff seeks provisional certification of the Settlement Class under Rule 23(b)(3), with the following Class Definition:

> The "Class," "Class Members," or "Members of the Class" means all current and former non-exempt hourly employees of Defendant working in a Covered Position throughout the State of California between October 8, 2018 and Preliminary Approval ("Class Period") who do not opt out and did not release all claims referenced in the Class Release herein by the date of Preliminary Approval. Defendant represents that as of February 25, 2025, there were approximately 892 Class Members.

(Revised Settlement Agreement ¶ 2.c.)

To obtain class certification, Plaintiff must provide facts in support of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). As the party seeking class certification, Plaintiff bears the burden of demonstrating that their proposed class meets each of these four requirements. Zinser v. Accufix Rsch. Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Additionally, Plaintiff must demonstrate the proposed class meets at least one of the following requirements of Rule 23(b): (1) prosecuting separate actions by individual class members would create a risk of either inconsistent adjudications with respect to individual class members, or a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other non-party class members or would substantially impair or impede their ability to protect their interests; (2) the party

---

[2] The following conditional class certification analysis is limited to the Class Action, not the PAGA Representative Action. See Hamilton v. Wal-Mart Stores, Inc., 39 F.4th 575, 583-84 (9th Cir. 2022) ("PAGA suits exhibit virtually none of the procedural characteristics of class actions, so there is no need for courts to consider adequacy of representation, numerosity, commonality, or typicality, and no need for certification under Rule 23, as the Rule 23 requirements are a logical mismatch for PAGA actions.") (citation modified).

opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate for the class as a whole; or (3) questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)(3); see Zinser, 253 F.3d at 1186. See also Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009).

The Court will address each of these requirements in turn.

**a. Numerosity**

The numerosity requirement is satisfied where "joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class." Harris v. Palm Springs Alpine Ests., Inc., 329 F.2d 909, 914 (9th Cir. 1964) (quoting Advertising Specialty Nat'l Ass'n v. FTC, 238 F.2d 108, 119 (1st Cir. 1956)). "[W]here a class is large in numbers, joinder will usually be impracticable." Jordan v. Los Angeles Cnty., 669 F.2d 1311, 1319 (1982), vacated on other grounds, 459 U.S. 810 (1982). Accord A. B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022). "Although the Supreme Court has held that 'the numerosity requirement imposes no absolute limitations,' . . . courts generally find this requirement satisfied when a class includes at least forty members." Pena v. Taylor Farms Pac., Inc., 305 F.R.D. 197, 213 (E.D. Cal. 2015) (first quoting Gen. Tel. Co. of Nw. v. E.E.O.C., 446 U.S. 318, 330 (1980), then citing Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010)) (cleaned up). See also Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25-30 members."); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.") (citation omitted).

Here, the proposed settlement class includes an estimated 892 members. (ECF No. 297-1 at 13.) Plaintiff also maintains that the size of the settlement class is ascertainable because its members may be identified by reference to Defendant's payroll records. (Id.)

The Court concludes that the estimated size of the proposed settlement class would make joinder impracticable in this case. Therefore, the proposed settlement class meets the numerosity requirement.

**b. Commonality**

Rule 23(a)(2)'s commonality element requires that questions of law or fact be common to the class. Fed. R. Civ. P. 23(a)(2). "Commonality is construed permissively and is 'less rigorous than the companion requirements of Rule 23(b)(3).'" Fine v. Kansas City Life Ins. Co., No. 2:22-cv-2071, 2023 WL 7393027, at *3 (C.D. Cal. Nov. 6, 2023) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011)). There is no requirement that all questions of law and fact be common to satisfy the rule; the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. Hanlon, 150 F.3d at 1019.

Here, the parties agree that for purposes of settlement, the claims of the putative class members all stem from the same allegations. (Revised Settlement Agreement ¶ 14.) All members of the proposed settlement class were subject to the same or similar operations and employment policies, practices, and procedures. (ECF No. 297-1 at 14.) Plaintiffs assert that common questions include: (a) whether Defendant fails to authorize and permit, make available, and/or provide California Class Members meal and rest periods to which they are entitled in violation of the Labor Code and Wage Orders and in violation of Business and Professions Code sections 17200 et seq.; (b) whether Defendant fails to compensate Class Members for all hours worked, including minimum wages and overtime compensation, in violation of Labor Code and Wage Orders, and in violation of Business and Professions Code sections 17200 et seq.; (c) whether Defendant has a policy and/or practice of requiring Class members to perform work off-the-clock and without

compensation; (d) whether Defendant fails to provide Class Members with timely, accurate itemized wage statements in violation of the Labor Code and Wage Order; (e) whether Defendant fails to pay Class Members all wages due upon the end of their employment in violation of the Labor Code and Wage Orders and in violation of Business and Professions Code sections 17200 et seq.; and (f) the proper formula for calculating restitution, damages, and penalties owed to Plaintiff and the Class. Id.

The Ninth Circuit has held that the commonality requirement is satisfied when the lawsuit challenges a system-wide practice or policy that affects all the putative class members, even where there are factual differences among the individual litigants. See Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499 (2005)) (finding the commonality requirement met where all members of a putative class of disabled prisoner plaintiffs challenged the same parole related policies and practices implemented by the Board of Prison Terms under the ADA, despite having different disabilities); LaDuke v. Nelson, 762 F.2d 1318, 1332 (9th Cir. 1985) (finding a "question of law or fact common to the class" on the basis that all putative class members challenged the constitutionality of the same INS practice).

Here, all putative members of the settlement are employees of Defendant who were subject to the same or similar employment policies, practices, and procedures being challenged in the operative complaint. Therefore, the Court concludes that the commonality requirement is satisfied.

**c. Typicality**

The claims or defenses of the class representative must be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Staton, 327 F.3d at 957 (quoting Hanlon, 150 F.3d at 1020); see also Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

and whether other class members have been injured by the same course of conduct.") (citation omitted). The claims of the putative class representatives and the claims of the putative class must arise from the same events or courses of conduct and must be based on the same legal theory. In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig., 122 F.R.D. 251, 256 (C.D. Cal. 1988). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon976 F.2d at 508. Class certification is inappropriate "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon, 976 F.2d at 508 (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, 903 F.2d 176, 180 (2d. Cir. 1990)).

Here, Plaintiff asserts that he was subject to the same relevant policies and procedures governing their compensation, hours of work, and meal and rest periods as were absent members of the putative settlement class. (ECF No. 297-1 at 13.) His claims arise from the same underlying facts and rest on the same legal theories as the claims of absent class members. Moreover, nothing in the Operative Complaint suggests that any of Plaintiff's claims would be subject to unique defenses that would not apply to the claims of the absent class members. Therefore, the Court concludes that the typicality requirement is met.

**d. Adequate Representation**

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement is satisfied, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Anders v. Cal. State Univ. Fresno, No. 23-15265, 2024 WL 177332, at *1 (9th Cir. Jan. 17, 2024) (quoting Hanlon, 150 F.3d at 1020). This inquiry is also relevant to the Court's inquiry into whether a proposed class settlement is fair under Rule 23(e). Kim v. Allison, 87 F.4th 994, 1000 (9th Cir. 2023); see also Fed. R. Civ. P. 23(e)(2)(A). With respect to the first

question, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." In re Online DVDRental Antitrust Litig., 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., Newberg on Class Actions § 3.58 (5th ed. 2011)). A conflict is fundamental when it goes to the specific issues in controversy. Id. As to the second question, "the relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." Id. (quoting Roper v. Consurve, Inc., 578 F.2d 1106, 1112 (5th Cir. 1978)).

Plaintiff contends that the adequacy of representation requirement is met here because Plaintiff's "claims are not antagonistic to the claims of Class Members," and he "has prosecuted this case vigorously for over three years with the interests of the Class Members in mind." (ECF No. 297-1 at 13.) To that end, Plaintiff avers that he "worked with [his] attorneys to prepare the complaints; provided documents and information regarding [his] experience working for Defendant; attended [his] deposition on or around May 20, 2022, responded to several sets of discovery requests, stayed up to date on the case, the mediation process and settlement discussions; and otherwise remained in regular contact with [his] attorneys." (ECF No. 297-6, Declaration of Conrad Reloj, ("Reloj Decl."), ¶ 21.) Based on these assertions, the Court is preliminarily satisfied that Plaintiff's interest aligns with those of the proposed class members and that Plaintiff has and will continue to vigorously prosecute the action on behalf of the class.

Additionally, Plaintiff asserts adequacy of representation is met by counsel because "Class Counsel possesses extensive experience in class action and employment litigation, including wage-and-hour class actions, and do not have any conflicts with the Class." (ECF No. 297-1 at 13.) In support of the adequacy of Schneider Wallace Cottrell Kim LLP ("SWCK"), Attorney Carolyn H. Cottrell submitted a declaration detailing both her experience and that of the firm. (ECF No. 297-2, "Second Cottrell Decl.") For example, Cottrell attests, *inter alia*, that "SWCK is regarded as one of the leading private plaintiff's firms in wage and hour class actions and employment class actions." (Id. ¶ 6.) Cottrell

herself is a partner of SWCK, has litigated hundreds of actions, and has devoted "nearly [her] entire legal career…to advocating for the rights of individuals who have been subject to illegal pay policies, discrimination, harassment and retaliation and representing employees in wage and hour class actions." (Id. ¶ 8.)

Based on the assertions of Plaintiff and Class Counsel, and on the record currently before the Court, the adequacy of representation requirement is conditionally satisfied.

Accordingly, the Court finds Plaintiff has met his burden of demonstrating the presence of each of the four Rule 23(a) prerequisites at this stage.

**e. Predominance**

Plaintiff must also show that at least one subsection of Rule 23(b) is satisfied; in his motion, Plaintiff argues that the Rule 23(b) predominance requirement is met. The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). The matters pertinent to the Court's analysis of whether the predominance requirement of Rule 23(b)(3) is satisfied include: (A) the class member's interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in this particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, Plaintiff argues that "the Class is entirely cohesive because resolution of Plaintiff's and Class Members' claims hinges on the uniform policies and practices of Defendant, rather than treatment the Class Members experienced on an individual level." (ECF No. 297-1 at 15.)

Further, as noted in the Court's discussion of the commonality requirement, the legal and factual issues underlying this action are common to all members of the proposed settlement class, in that all members were subject to the same employment policies, practices, and procedures of Defendants. However, the predominance criterion "is far more

demanding" than the commonality requirement. Amchem, 521 U.S. at 624. The Court must also consider there are any factual or legal questions that differ among class members that might undermine class cohesion, and "caution" is warranted "when individual stakes are high and disparities among class members great." Id. at 624-25.

Here, the record does not give rise to any concern that there are disparities among the putative members of the settlement class to such an extent that common questions of law and fact among class members no longer predominate over questions affecting only individual members, or that pursuing litigation on an individual basis would be superior to a class action. Given that the putative settlement has approximately 892 members, a class action is a method of adjudication superior to hundreds of individual lawsuits, particularly where the claims of most of the class members would be too small to justify the cost and risk of litigation. (Revised Settlement Agreement ¶ 2.c.) Therefore, it would not be practical or economically feasible for the average class member to pursue his or her claims on an individual basis. These barriers to individual litigation far outweigh any difficulties in managing a class action, particularly where, as here, the members of the settlement are readily ascertainable from Defendants' records, the parties have already reached a tentative settlement on a class-wide basis, and Plaintiff has a clear plan in place to provide appropriate notice of the settlement and an opportunity to object and/or to opt out of the settlement to all class members.

Moreover, the proposed settlement is structured in such a way that each class member will receive a pro rata distribution of the settlement proceeds proportionate to the number of workweeks he or she performed for Defendant between October 8, 2018 and Preliminary Approval, an additional share for each workweek performed between October 8, 2020 and Preliminary Approval, and a flat seven additional shares for individuals whose employment terminated between October 18, 2018 and Preliminary approval. (Id. ¶ 34.)

For these reasons, the Court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class

action is superior to other available methods for fair and efficient adjudication of the controversy. Accordingly, Rule 23(b)(3) is met.

## V. PRELIMINARY FAIRNESS DETERMINATION UNDER RULE 23(e)

Next, the Court must make a preliminary determination regarding whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2). Preliminary approval of the settlement is appropriate if the settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079; Sciortino v. PepsiCo, Inc., Case No. 14-cv-00478, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016). In assessing the Revised Settlement Agreement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026. The Court must balance the following factors in making this assessment:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id.

"At the preliminary approval stage, a full fairness analysis is unnecessary. . . . Closer scrutiny is reserved for the final approval hearing." Hawkins v. Kroger Co., Case No. 15cv-2320, 2021 WL 2780647, at *3 (S.D. Cal. July 2, 2021) (internal quotations and citations omitted). See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at this stage. . . . The court, therefore, will simply conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members.") (internal quotations and citation omitted).

Upon initial review, the Court concludes preliminary approval of the Revised Settlement Agreement is appropriate.

First, the Revised Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations. The parties reached the agreement following multiple mediations, including three separate mediations facilitated by Hon. Michael Marcus and a fourth mediation before mediator Hunter Hughes. (Revised Settlement Agreement ¶ 7.) The parties ultimately settled during the fourth mediation facilitated by Mr. Hughes on September 16, 2024. (Id.) Prior to mediation, the parties exchanged significant pre-conditional certification discovery, including thousands of pages of documents and data and interviews of numerous Class and Collective Members covering topics such as dates and locations of work, hours of work, pre-shift and post-shift off-the-clock work, and meal and rest breaks. (Second Cottrell Decl. ¶¶ 10-11.) Additionally, after the Court granted Plaintiff's Motion to Conditionally Certify the Collective on March 31, 2023, the parties engaged in substantial discovery and motion practice, including Defendant's policies, job descriptions, personnel records, written complaints, and payroll records and both parties' depositions of fact and expert witnesses and Daubert motion filings. (ECF No. 101; Second Cottrell Decl. ¶¶ 12-14.)

The use of a mediator on four separate occasions to negotiate settlement and the exchange of discovery beforehand both support a conclusion that Plaintiff was appropriately informed in negotiating a settlement, and that the settlement was not the result of collusion or bad faith by the parties or counsel. See Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 619-20 (N.D. Cal. 2014). The Court does not at this juncture have reason to find the settlement negotiations were collusive or that the parties did not approach their negotiations seriously with the interests of the absent putative class members in mind.

Second, the Court finds the Revised Settlement Agreement has no obvious deficiencies and falls within the range of possible approval. With respect to factors concerning the strength of Plaintiff's case and the risk of continued litigation, as detailed

in the Court's discussion of the adequacy requirement, Plaintiff has provided a thorough accounting of the risks attendant in continued litigation and the potential weaknesses of their case. (ECF No. 297-1 at 13.) Taking these risks into account, the Court finds that the proposed gross settlement amount of $8,500,000.00—which represents approximately 20% of counsel's estimate of the likely awards at trial should Plaintiff prevail on all claims —appears fair, adequate, and reasonable. (Revised Settlement Agreement ¶ 2.2r; ECF No. 297 at 18:25, 19:17-20.) The parties completed significant formal and informal discovery before the conditional certification of the Collective in March 2023 and before reaching settlement. (Second Cottrell Decl. ¶¶ 12-15.) The Court concludes that given the age and complexity of the case, and the risks and expenses involved in pursuing continued litigation, the $8,500,000.00 settlement amount represents a fair, reasonable, and adequate recovery for Plaintiff and the absent class members.

The Court also finds that Plaintiff adequately addressed the deficiencies identified in its order denying Plaintiff's first motion for preliminary approval.

First, the Court previously denied preliminary approval on the grounds that Plaintiff had not adequately explained "why individuals who were employed after October 8, 2020, should receive more" than other employees. (ECF No. 290 at 6.) In his renewed motion, Plaintiff explains that this cutoff date "reflects the applicable statute of limitations period," and that "[c]laims arising prior to that date are subject to greater litigation risks" due to time-bar defenses that "significantly diminish their recoverability." (ECF No. 297-1 at 20.) As a result, according to Plaintiff, "damages associated with the post-cutoff period are reasonably expected to be higher and more readily recoverable," and this difference in claim value is reflected in the current allocation formula. (Id.) The Court is satisfied with this explanation and concludes that Rule 23(e)(2)(D)'s requirement that class members be treated "equitably relative to each other" is satisfied.

Second, the Court also previously denied preliminary approval on the grounds that the release provisions were ambiguous in scope, as they referred to complaints and documents besides the Operative Complaint that would be burdensome for class members

to consult, and that the release provisions related to the PAGA claims were unlawful in scope. (ECF No. 290 at 7, 8.) These deficiencies are addressed in the Revised Settlement Agreement, which refers only to the Operative Complaint, and restricts the scope of the Released PAGA Claims to statutory PAGA penalties. (Revised Settlement Agreement ¶¶ 18, 18.c.)

Finally, the Court notes the Revised Settlement Agreement addresses the procedural provision deficiencies the Court identified in the first Settlement Agreement. (See ECF No. 290 at 9010.) While the previous version required the release of FLSA claims by Collective Members who exclude themselves from the settlement, the Revised Settlement Agreement states that Class Members who do not opt-in shall not release any FLSA claims (Revised Settlement Agreement ¶ 18.a.) Additionally, the Revised Settlement Agreement omits the more onerous mandatory procedural requirements for objecting to the agreement than those required by law; imposes a deadline for objecting to Class Counsel's requested Fee Award and Costs, or any requested Service Award to Plaintiff; and requires Court approval for amendment or modification of the agreement. (Revised Settlement Agreement ¶¶ 23, 52.)

Turning to the experience and views of counsel, class counsel has significant class action experience. Ms. Cottrell has litigated hundreds of wage-and-hour, discrimination, and civil rights actions throughout nearly her entire career. (Second Cottrell Decl. ¶ 8.) Ms. Cottrell also provided a list of over 65 cases in which the firm SWCK acted as class counsel in California. (Id. ¶ 7.) Plaintiff's counsel agrees that the Revised Settlement Agreement represents a fair and reasonable settlement for the class members in light of the complexities of the case and uncertainties of class certification and litigation. Plaintiff describes the settlement as an "exceptional recovery" and "an efficient outcome in the face of expanding and uncertain litigation." (ECF No. 297-1 at 1.) "Because the parties' counsel are the ones most familiar with the facts of the litigation, courts give 'great weight' to their recommendations. . . . Therefore, the plaintiffs' counsel's recommendations 'should be given a presumption of reasonableness.'" Shannon v. Sherwood Mgmt. Co., No. 19-CV-01101-BAS-JLB, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (citations omitted).

The Court finds it appropriate to afford a presumption of reasonableness to counsel's views that the proposed Gross Settlement Amount represents a fair and reasonable result for the class members.

The Court is not yet in a position to gauge the reactions of class members to the proposed settlement, and there is no governmental participant in the case. Accordingly, based on the factors that are currently applicable to the Court's review, the Court preliminarily finds the proposed settlement fair, reasonable, and adequate under Rule 23(e)(2).

Despite finding the Revised Settlement Agreement to be fair upon preliminary review, the Court notes that "[s]ettlement adequacy should be scrutinized when there is evidence of fee-driven settlements, exorbitant service payments, or collusion between the parties." Alberto, 252 F.R.D. at 663 (citing Hanlon, 150 F.3d at 1022). Here, Plaintiff requests an attorney fee award of up to a maximum of one-third of the Gross Settlement Amount. (ECF No. 297-1 at 29.) This amount exceeds the Ninth Circuit's benchmark attorney fee award of 25% of the common fund in class action cases. See, e.g., Hanlon, 150 F.3d at 1029; Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989). Indeed, even in cases where the fee award requested does not exceed the 25% benchmark rate, the Ninth Circuit has cautioned that this rate, "although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark [of 25%] or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002). See also Alberto, 252 F.R.D. at 667-69 (rejecting a request for an attorney fee award of 22% of the gross settlement amount on the basis that, although the record "shows no evidence of bribery or collusion in reference to the requested attorneys' fees, it is nonetheless devoid of any direct support for plaintiff's counsel's requested fee amount[,]" exercising its discretion to employ the lodestar method to calculate reasonable attorney fees instead, and requiring plaintiff's counsel to file "a thorough fee award petition prior to the fairness hearing" to aid in that calculation).

Plaintiff's counsel in this case has provided arguments in support of the requested fee award, including a discussion of the risks taken in bringing the case, the extensive time, effort, and expense dedicated to the case, the skill and determination shown by class counsel, the results achieved, and the other cases class counsel turned down to devote to this matter. (ECF No. 297-1 at 29-30; Second Cottrell Decl. ¶ 7.) Plaintiffs have also cited other cases in California federal and state courts where fee awards equal to or greater than 33% of the common fund were approved. (ECF No. 297-1 at 29-30, citing In re Activision, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); Jones, et al., Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020); Soto, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019); Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc., No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011); Wren, 2011 WL 1230826.) While the Court preliminarily approves this request, Plaintiff's counsel should be prepared to address all the Ninth Circuit's applicable factors for determining the appropriateness of the requested attorney fees.

Plaintiffs request a service award of $20,000 for the named plaintiff Conrad Reloj. Although such awards are discretionary, "incentive awards are fairly typical in class action cases." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). The purpose of incentive awards is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. In deciding whether to approve an incentive award, courts consider factors including "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015).

Here, Plaintiff's service award request represents 0.24% of the gross settlement amount and falls within the typical range and percentage of the gross settlement amount granted to class representatives in similar class actions. See, e.g., Pipich v. O'Reilly Auto Enters., LLC, et al., No. 3:21-CV-01120-AHG, 2025 WL 42505, at *2, *8 (S.D. Cal. Jan.

7, 2025) (approving incentive awards for five class representative totaling $55,000 because it represented only 1.34% of the gross settlement amount of $4,100,000); Singer v. Becton Dickinson & Co., No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (approving $25,000 service award for plaintiff in FLSA action); Salazar v. Driver Provider Phoenix LLC, No. CV-19-05760-PHX-SMB, 2024 WL 2923718, at *7 (D. Ariz. June 10, 2024) (preliminarily approving “service awards of $20,000 each” to four named plaintiffs in FLSA action out of $2.5 million settlement); Johnson v. U.S. Bank Nat’l Ass’n., No. 19-CV-286 JLS (LL), 2020 WL 13652583, *3 (S.D. Cal. Aug. 20, 2020) (awarding $15,000 - $25,000 to class representatives in wage and hour action).

Plaintiffs have also provided an explanation for why they believe the requested service award to the named Plaintiff is fair, including “the critical role he played in this case and in the PAGA action, and the time, effort, and risks – including risks to future employment – he undertook in helping secure the result obtained on behalf of the Class Members, the Collective, and the State of California.” (ECF No. 297-1 at 27). Plaintiffs also credit the named Plaintiff’s substantial devotion of time and effort over three years to actively participate in the litigation. (Id. at 27-28.)

Accordingly, the Court preliminarily finds that the requested attorneys’ fees and class representative service payment are justified.

## VI. PRELIMINARY APPROVAL OF PAGA SETTLEMENT CLAIM

As the Settlement resolves Plaintiff’s PAGA claims, the Court must analyze whether the Settlement fulfills the statutory requirements of PAGA and is fundamentally fair, adequate, and reasonable in light of PAGA’s policies and purposes. See Cal. Lab. Code § 2699(s)(2) (“The superior court shall review and approve any settlement of any civil action filed pursuant to [the PAGA statute].”); see also Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (identifying that district courts apply a “Rule 23-like standard” due to the absence of authority governing the standard for review and approval of PAGA settlements).

//

**a. PAGA Statutory Requirements**

Under PAGA's remedial scheme, civil penalties are distributed between "the aggrieved employees" (25%) and the Labor and Workforce Development Agency ("LWDA") (75%). See Cal. Lab. Code § 2699(i) (2022) (amended July 1, 2024).[3] The proposed settlement must be sent to the LWDA at the same time it is submitted to the Court. Cal. Lab. Code § 2699(s)(2). Finally, aggrieved employees are prohibited from opting out of any settlement. See Arias v. Superior Ct., 46 Cal. 4th 969, 986 (2009) ("Because an aggrieved employee's action under the Labor Code Private Attorneys General Act of 2004 functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."); O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) ("Thus, in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement.")

First, the Revised Settlement Agreement distributes the PAGA allocation appropriately, with $95,625, or 75%, to be paid to LWDA, and $31,875, or 25%, to be distributed to PAGA Employees. (Revised Settlement Agreement ¶¶ 2.v., 30.c.)

Second, in accordance with statutory requirements, the Settlement mandates Plaintiff provide the Revised Settlement Agreement to the LWDA. (Revised Settlement Agreement ¶ 44.) "At the same time as they submit this Class Action Settlement Agreement to the Court for Preliminary Approval, Class Counsel shall submit a copy of this Agreement to the LWDA. Within ten (10) days following the Effective Date, Class Counsel shall

---

[3] Effective July 1, 2024, civil penalties recovered by aggrieved employees are now allocated with 65% distributed to the LWDA and 35% to the aggrieved employees. Cal. Lab. Code § 2699(i) (2024). However, the amendment does not apply to the instant action as the complaint was filed prior to June 19, 2024. See Cal. Lab. Code § 2699(v)(1).

submit a copy of the Final Approval Order and Judgment entered by the Court to the LWDA." (Id.)

Third, the Revised Settlement Agreement and Notice both clearly state that PAGA employees cannot opt out from the settlement of the PAGA claims. (Revised Settlement Agreement ¶ 24, Ex. A, General Class Notice at 6.)

Accordingly, the Court is preliminarily satisfied that the PAGA statutory requirements are met by the instant Revised Settlement Agreement.

**b. Fairness, Adequacy, and Reasonableness of PAGA Allocation**

"It is . . . important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." Haralson, 383 F. Supp. 3d at 971 (quoting O'Connor, 201 F. Supp. 3d at 1133).

Here, the PAGA Allocation represents 1.5% of the Gross Settlement Amount, which Plaintiffs argue is within the range of PAGA settlements approved by district courts in California. See ECF No. 297-1 at 22-23. The Court agrees that the PAGA allocation at issue "falls within the zero to two percent range for PAGA claims approved by courts." Alcala v. Meyer Logistics, Inc., No. CV177211PSGAGRX, 2019 WL 4452961, at *9 (C.D. Cal. June 17, 2019); see e.g., Ahmed v. Beverly Health & Rehab. Servs., Inc., 2018 U.S. Dist. LEXIS 20460, 2018 WL 746393, at *10 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement); Schiller v. David's Bridal, Inc., 2012 U.S. Dist. LEXIS 80776, at *35-36 (E.D. Cal. 2012) (approving PAGA settlement of $7,500 or 0.14% of the total settlement); Franco v. Ruiz Food Prods., Inc., 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 at *14 (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement); Garcia v. Gordon Trucking, 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27% of the total settlement).

Accordingly, the Court preliminarily finds the PAGA Allocation to be fair, adequate, and reasonable considering it in relation to the Class Recovery.

**c. Conclusion**

Based on the foregoing, the Court is preliminarily satisfied that the Settlement meets PAGA's statutory requirements and is fair, adequate, and reasonable.

## VII. PROPOSED SETTLEMENT NOTICE

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); see also Amchem, 521 U.S. at 617. Regular mail, electronic mail, and other appropriate means should all be considered. See Fed. R. Civ. P. 23(c)(2)(B). The Rule further states that the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under

Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

Upon review of the proposed Class Notice (Ex. A General Class Notice), the Court concludes the notice complies with all requirements of Rule 23. The notice provides all of the information required by Rule 23(c)(2)(B) in plain, easily understood language, and fairly apprises class members of the terms of the settlement and the options open to dissenting class members.

As for the manner of notice, the Revised Settlement Agreement provides that the Defendants will deliver all available class data to the Administrator within thirty (30) calendar days after the Court grants preliminary approval of the settlement. (Revised Settlement Agreement ¶ 21.c.) Using the class list provided, the Settlement Administrator will calculate the number of workweeks and PAGA workweeks for Aggrieved Employees. (Id. ¶ 21.d.) The Settlement Administrator will be responsible for preparing, printing, mailing, and emailing the Class Notice to all class members identified in the class data. (Id. ¶ 21.b.) The Settlement Administrator will also create a website and a toll-free telephone number to field inquiries from Class Members during the notice and settlement administration periods. (Id.) If any Class Notice is returned to the Settlement Administrator with a forwarding address, it will be remailed within three (3) business days following receipt of the returned mail. (Id. ¶ 21.e.) If no forwarding address is provided, the Settlement Administrator shall attempt to locate the correct address using a skip-trace or other search using the name address and or Social Security number of the Class Member and re-mail the Notice of Settlement. (Id.) For any class members whose notice had to be re-mailed, the Notice Deadline will not be extended. (Id.)

The Court finds the parties' proposed notice and means of delivery of the notice to the class members constitute "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Therefore, the Court approves the Class Notice.

## VIII. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion and **ORDERS** as follows:

1. The settlement as set forth in the Revised Settlement Agreement (ECF No. 297-3) is preliminarily **APPROVED** as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e);
2. The Class as defined in the Revised Settlement Agreement is conditionally **CERTIFIED** for purposes of settlement;

3. Plaintiff Conrad Reloj is **APPOINTED** as the class representative;
4. Schneider Wallace Cottrell Kim LLP is **APPOINTED** as Class Counsel;
5. CPT Group is preliminarily approved as the mutually agreed-upon third party Settlement Administrator;
6. The proposed Class Notice (ECF No. 297-3, Exhibit A) is **APPROVED** and must be disseminated to the proposed Settlement Class as provided in the Revised Settlement Agreement;
7. Class Members shall have until the Notice Deadline, as provided in the Revised Settlement Agreement, to object to or opt out of the Settlement (see Revised Settlement Agreement ¶ 2.u.);
8. The Court **SETS** a briefing schedule as follows:
    a. Plaintiff's motions for (1) attorneys' fees and costs and (2) final approval of class action settlement must be filed by no later than **February 11, 2027.**
    b. Responses—including either an opposition or a notice of non-opposition for any motion not filed jointly, or any response by LWDA—must be filed by no later than **February 25, 2027.**
    c. Replies may be filed by no later than **March 4, 2027**.

The motion for final approval MUST:

- ADDRESS when the CAFA Notice was served and upon whom it was served and INCLUDE and ADDRESS any objections or responses received from the government officials;
- ADDRESS the actual efficacy of the Notice Program, as supported by data from the Settlement Administrator; and
- INCLUDE and ADDRESS any Objections or responses received as of the filing date; and
- ADDRESS whether LWDA commented on the proposed settlement and INCLUDE LWDA's comments, if any.

In support of the attorneys' fees, costs, and class representative's enhancement awards motion, Class Counsel MUST:

- PROVIDE documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled;
- PROVIDE documentation itemizing and supporting the reasonableness of litigation expenses for which Class Counsel seeks reimbursement; and
- BE PREPARED to address any questions the Court may have regarding attorneys' fees, expenses, and service awards at the Final Approval Hearing.

9. The Final Approval Hearing shall be held on **March 25, 2027** at **1:30 p.m.** in **Courtroom 2C** of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101. The Court will consider:
    - Whether the proposed Class Settlement should be finally approved as fair, reasonable, and adequate;
    - Whether Class Counsel's requested attorneys' fees and costs are reasonable;
    - Whether Plaintiff's incentive awards are appropriate; and
    - Whether the Settlement Administrator's expenses are reasonable.

**IT IS SO ORDERED.**

Dated: November 4, 2026

Hon. Michael S. Berg
U.S. Magistrate Judge